1

2

3

4            IN THE UNITED STATES DISTRICT COURT

5          FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7   TIM DAVIS, et al., individually and on          Case No. 20-cv-01753-MMC
    behalf of all others similarly situated,
8                                                    ORDER GRANTING DEFENDANTS'
              Plaintiffs,                            MOTION TO DISMISS
9
         v.
10
    SALESFORCE.COM, INC., et al.,
11
              Defendants.
12

13          Before the Court is the "Motion to Dismiss and to Strike Jury Demand," filed June

14   15, 2020, by defendants Salesforce.com, Inc. ("Salesforce"), Board of Directors of

15   Salesforce.com, Inc. ("Board"), Marc Benioff ("Benioff"), The Investment Advisory

16   Committee ("Committee"), Joseph Allanson ("Allanson"), Stan Dunlap ("Dunlap"), and

17   Joachim Wettermark ("Wettermark").  Plaintiffs have filed opposition, to which defendants

18   have replied.  Having considered the papers filed in support of and in opposition to the

19   motion, the Court rules as follows.[1]

20                                  **BACKGROUND**

21          Plaintiffs are former Salesforce employees that participated in the Salesforce

22   401(k) Plan ("the Plan").  (See Compl. ¶¶ 15-17.)  In 2000, the Plan was established by

23   Salesforce to provide benefits to eligible Salesforce and Salesforce.com Foundation

24   employees.  (See id. ¶ 37.)  The Plan is a "defined contribution plan," i.e., a plan wherein

25   participants' benefits "are limited to the value of their own investment accounts, which is

26   determined by the market performance of employee and employer contributions, less

27   _____

28          [1] By order filed September 18, 2020, the Court took the matter under submission.

expenses." (See id. ¶¶ 2-3 (internal quotation and citation omitted).)

As of December 31, 2018, the Plan had over $2 billion in assets (see Compl. ¶ 5), and offered twenty-seven investment options, comprised of actively and passively managed funds, as well as a brokerage link (see id. ¶¶ 49, 99), through which link participants have access to "a wide variety" of additional investment options with "a diverse fee structure" (see Defs.' Request for Judicial Notice ("RJN"), filed June 15, 2020, Ex. 7 at 11).[2]

By the instant action, plaintiffs allege defendants breached their fiduciary duties to the Plan and Plan participants in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") §§ 1104 and 1105. (See Compl. ¶ 68.)

First, plaintiffs allege the Committee, Allanson, Dunlap, and Wettermark (collectively, "Committee Defendants") breached their fiduciary duty of prudence by selecting and retaining investment options with high costs relative to other, comparable investments. (See Compl. ¶¶ 122-123.) Second, plaintiffs allege the Committee Defendants breached their fiduciary duty of loyalty, in that some of the funds' "investment managers own a portion of [Salesforce]." (See Compl. ¶¶ 117-119.) Lastly, plaintiffs allege the Board, Benioff, and Salesforce (collectively, "Monitoring Defendants") breached their fiduciary monitoring duty by failing to adequately monitor the Committee Defendants. (See Compl. ¶¶ 127-133.)

Based on the above allegations, plaintiffs assert two Claims for Relief under

---

[2] The Court hereby GRANTS defendants' unopposed Requests for Judicial Notice (see id.; see also Second Request for Judicial Notice, filed Aug. 3, 2020), wherein defendants seek judicial notice of the following documents: (1) Plan-related documents, including IRS Form 5500 filings from 2012-2018, (2) prospectuses for funds referenced in the complaint, (3) a third-party research paper referenced in the complaint, and (4) two JPMorgan press releases regarding JPMorgan SmartRetirement funds. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007) (noting, "a court can consider a document on which the complaint relies if the document is central to the plaintiff's claim, and no party questions the authenticity of the document"); White v. Chevron Corp., No. 16-cv-0793, 2017 WL 2352137, at *5 (N.D. Cal. May 31, 2017), aff'd, 752 F. App'x 453 (9th Cir. 2018) (taking judicial notice of Form 5500 filings, a summary prospectus, and third-party articles and reports).

United States District Court
Northern District of California

ERISA: (1) a claim against the Committee Defendants for breach of the fiduciary duties of prudence and loyalty; and (2) a claim against the Monitoring Defendants for failing to adequately monitor the Committee Defendants.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

**A.     First Claim for Relief: Breach of Fiduciary Duties of Prudence and Loyalty**

In the instant motion, defendants contend both Claims for Relief are subject to dismissal for failure to state a claim. The Court addresses below the sufficiency of

plaintiffs' allegations.

### 1.    Breach of Fiduciary Duty of Prudence

In their First Claim for Relief, plaintiffs allege the Committee Defendants breached their fiduciary duty of prudence by selecting and retaining costly investment options.  In that regard, plaintiffs allege the Plan retained several actively managed funds "despite the fact that these funds charged grossly excessive fees compared with comparable or superior alternatives."  (See Compl. ¶ 99.)[3]  Plaintiffs also allege the Committee Defendants failed to investigate the availability of lower-cost share classes of certain mutual funds offered in the Plan (see id. ¶¶ 104-109, 123), and that the Plan "did not receive any additional services or benefits based on its use of more expensive share classes" (see id. ¶ 109).  Further, plaintiffs allege, the Committee Defendants failed to adequately investigate the availability of collective trusts[4] and separate accounts[5] "in the same investment style of mutual funds in the Plan."  (See id. ¶¶ 110-111, 123.)

Under ERISA, a plan fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," see 29 U.S.C. § 1104(a)(1), and must do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," see 29 U.S.C. § 1104(a)(1)(B).  To evaluate whether a plan fiduciary has breached his fiduciary

---

[3] Actively managed funds, "which have a mix of securities selected in the belief they will beat the market, have higher fees, to account for the work of the investment managers of such funds and their associates" (see id. ¶ 82), whereas passively managed funds, or index funds, "are designed to mimic a market index such as Standard & Poor's 500" and "offer both diversity of investment and comparatively low fees" (see id. ¶ 81).

[4] Collective trusts "are administered by banks or trust companies, which assemble a mix of assets such as stocks, bonds and cash," and have "much lower" costs given their "simple disclosure requirements" and inability to "advertise [or] issue formal prospectuses."  (See id. ¶ 91.)

[5] Separate accounts "are another type of investment vehicle similar to collective trusts, which retain their ability to assemble a mix of stocks, bonds, real property and cash, and their lower administrative costs," and offer "the ability to negotiate fees."  (See id. ¶¶ 94-95.)

United States District Court
Northern District of California

duty of prudence, the Court focuses "not only on the merits of the transaction, but also on the thoroughness of the investigation into the merits of the transaction." Howard v. Shay, 100 F.3d 1484, 1488 (9th Cir. 1996). "Because the content of the duty of prudence turns on the circumstances . . . prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425 (2014) (internal quotation and citation omitted).

### a.   Actively Managed Funds

As noted, plaintiffs allege the Committee Defendants acted imprudently by retaining "several" actively managed funds where less costly alternatives, specifically passively managed funds, were available. (See Compl. ¶¶ 99, 113, 115.)[6]  Additionally, plaintiffs allege, eleven actively managed funds offered in the Plan have excessive fees in comparison to the "ICI Median Fee"[7] for the same investment category.  (See id. ¶¶ 101-103.)  According to plaintiffs, actively managed funds "rarely" outperform passively managed funds "over a longer term," and, plaintiffs allege, the Plan offered nine actively managed JPMorgan SmartRetirement Institutional Class funds and one actively managed Fidelity Diversified International Class K fund that "lagged behind in performance" when compared with certain passively managed funds, as demonstrated by their five-year returns as of January 2020.  (See id. ¶ 115.)[8]

At the outset, defendants argue, passively managed funds "are not comparable to actively-managed funds in any meaningful way." (See Mot. to Dismiss at 11:6-7.)  As set

---

[6] In their opposition to the instant motion, plaintiffs contend four of the less costly "alternative" funds are "actively managed investments."  (See Opp. to Mot. to Dismiss at 16:3-12.)  As defendants point out, however, those funds, like the other alternative funds proposed by plaintiffs, are passively managed.  (See Reply at 10:18-22 & n.4.)

[7] The ICI Median Fee is the median "percentile asset-weighted mutual fund expense ratio[] as a percentage of assets among plans with audited 401(k) filings in the BrightScope database by mutual fund investment objective and plan assets."  (See RJN, filed June 15, 2020, Ex. 13 at 69.)

[8] The Court assumes the five-year returns listed in paragraph 115 of the complaint are calculated as of January 2020, the date for the corresponding expense ratios listed therein.  (See id.)

forth below, the Court agrees.

Where, as here, plaintiffs claim "a prudent fiduciary in like circumstances would have selected a different fund based on the cost or performance of the selected fund, [plaintiffs] must provide a sound basis for comparison—a meaningful benchmark." See Meiners v. Wells Fargo & Co., 898 F.3d 820, 822 (8th Cir. 2018) (internal quotation omitted). Passively managed funds, however, ordinarily cannot serve as meaningful benchmarks for actively managed funds, because the two types of funds "have different aims, different risks, and different potential rewards that cater to different investors." See Davis v. Wash. Univ., 960 F.3d 478, 485 (8th Cir. 2020). As noted, actively and passively managed funds have, for example, different management approaches, and "analysts continue to debate whether active or passive management is a better approach." See id. Further, actively managed funds "can offer investors the chance to earn superior returns, access specialized sectors, or take advantage of alternative investment strategies" (see RJN, filed June 15, 2020, Ex. 13 at 59), while also "allow[ing] rapid turnover both in the funds' holdings and the participants' investments," whereas passively managed funds "typically disallow[] new investments for a month or more following any withdrawal," see Loomis v. Exelon Corp., 658 F.3d 667, 670 (7th Cir. 2011). In light of such differences, plaintiffs' allegations that passively managed funds are available as alternatives to the actively managed funds offered in the Plan do not suffice to demonstrate imprudence. See Davis, 960 F.3d at 484-85 (finding claim subject to dismissal where based on comparison of actively and passively managed funds; noting "[c]omparing apples and oranges is not a way to show that one is better or worse than the other").[9]

Next, as defendants point out, even assuming, arguendo, a passively managed fund can be used for purposes of comparison, the complaint here contains no factual

---

[9] For the same reasons, plaintiffs fail to base a viable claim on their contention that the expense ratios of ten actively managed funds offered in the Plan were excessive in comparison to the ICI Median Fee; as plaintiffs concede, the ICI Median Fee reflects the fees of both passively and actively managed funds.

United States District Court
Northern District of California

1   allegations to support a finding that the passively managed funds identified therein

2   "provide a 'meaningful benchmark.'"  (See Mot. to Dismiss at 13:11-13 (quoting Meiners,

3   898 F.3d at 822).)

4          In support of their asserted comparison, plaintiffs allege the passively managed

5   funds have "the same investment style" or "materially similar characteristics" as certain

6   actively managed funds offered in the Plan.  (See Compl. ¶¶ 113, 115.)  Such conclusory

7   allegations, however, are not sufficient to state a claim for relief, see Ashcroft v. Iqbal,

8   556 U.S. 662, 678 (2009) (holding "[t]hreadbare recitals of the elements of a cause of

9   action, supported by mere conclusory statements" do not suffice to state claim for relief);

10  see also Patterson v. Stanley, No. 16-CV-6568 (RJS), 2019 WL 4934834, at *12

11  (S.D.N.Y. Oct. 7, 2019) (finding plaintiffs' allegation that defendants imprudently retained

12  certain funds insufficient to state claim, where plaintiffs asserted, "in a conclusory

13  manner," that less costly alternative funds were "comparable . . . without ever explaining

14  how or why the funds were comparable" (internal quotation and emphasis omitted)).

15         Moreover, as defendants also point out, allegations "based on five-year returns are

16  not sufficiently long-term to state a plausible claim of imprudence."  (See Mot. to Dismiss

17  at 15:6-15); see also Patterson, 2019 WL 4934834, at *10 (noting, "consistent, ten-year

18  underperformance may support a duty of prudence claim" if the underperformance is

19  "substantial"); Dorman v. Charles Schwab Corp., No. 17-CV-00285-CW, 2019 WL

20  580785, at *6 (N.D. Cal. Feb. 8, 2019) (characterizing five years of underperformance as

21  "relatively short"; finding underperformance "measured on a five-year basis" insufficient to

22  support plaintiffs' allegation that funds "persistent[ly]" or "materially" underperformed).

23  Plaintiffs cite no authority to the contrary.[10]

24  _____

25         [10] In addition, a number of the funds challenged by plaintiffs were not offered for
    the entirety of the five-year period on which plaintiffs appear to rely, namely 2015 to
26  2020.  Out of the eleven Plan funds plaintiffs include in their five-year comparison, nine
    were, as of January 2018, no longer offered in the Plan.  (See RJN, filed June 15, 2020,
27  Ex. 15 (announcing "Institutional Share Class" of JPMorgan SmartRetirement funds
    "renamed" "Class R5," effective April 3, 2017); id. Ex. 9 (announcing share class changed
28  from "Class R5" to "Class R6," effective December 29, 2017).)

United States District Court
Northern District of California

1    Accordingly, plaintiffs fail to state an imprudence claim predicated on a

2  comparison of actively and passively managed funds.

3                    **b.    Lower-Cost Share Classes**

4    Plaintiffs allege the Committee Defendants acted imprudently by failing to

5  investigate and offer lower-cost share classes of certain mutual funds, which, according

6  to plaintiffs, "are identical to the mutual funds in the Plan in every way except for their

7  lower cost." (See Compl. ¶ 104.)  Specifically, plaintiffs identify two lower-cost share

8  classes, Class R5 and Class R6, for nine JPMorgan SmartRetirement Institutional Class

9  funds offered in the Plan, as well as one lower-cost share class for two Fidelity funds

10  offered in the Plan. (See id. ¶ 105.)  Based on the foregoing, plaintiffs allege the

11  Committee Defendants "knew or should have known of the existence of cheaper share

12  classes and therefore also should have immediately identified the prudence of

13  transferring the Plan's funds into these alternative investments." (See id. ¶ 106.)

14    At the outset, as noted, the Institutional Share Class of the nine JPMorgan

15  SmartRetirement funds was, as of April 3, 2017, renamed Class R5, and, as further

16  noted, the Plan offered the lowest-cost share class, Class R6, as of December 29, 2017.

17    Further, as defendants argue, the Form 5500 filings for the Plan indicate the fees

18  charged in connection with the JPMorgan SmartRetirement Institutional and Class R5

19  funds were used to pay for recordkeeping and other administrative services provided to

20  the Plan (see Mot. to Dismiss at 7:11-8:7 (citing RJN, filed June 15, 2020, Ex. 1 at 5, 7,

21  28-31; id. Ex. 2 at 5, 7, 39-42; id. Ex. 3 at 5, 7, 49-52; id. Ex. 4 at 5, 8, 9-12)),[11] an

22  arrangement which "frequently inure[s] to the benefit of ERISA plans," see Terraza v.

23  Safeway Inc., 241 F. Supp. 3d 1057, 1081 n.8 (N.D. Cal. 2017) (quoting Tussey v. ABB,

24  Inc., 746 F.3d 327, 336 (8th Cir. 2014)).  Known as "revenue sharing," this arrangement

25  provides an "obvious, alternative explanation" for why the Plan did not offer the lowest-

26

27    [11] In contrast to the page citations for other documents referenced herein, the page
   numbers for Exhibits 1, 2, 3, and 4 to the RJN, filed June 15, 2020, are those affixed to

28  the top of each page by this district's electronic filing program.

United States District Court
Northern District of California

1    cost share class for those funds, see White, 2017 WL 2352137, at *14 (internal quotation

2    omitted), and plaintiffs fail to allege any facts to support their conclusory allegation that

3    the Plan "did not receive any . . . services or benefits based on its use of more expensive

4    share classes" (see Compl. ¶ 109).

5        The majority of the cases on which plaintiffs rely in arguing courts have accepted

6    allegations similar to those pled in the Complaint (see Opp. to Mot. to Dismiss at 9:2-9 &

7    n.7; see also id. at 1:21-2:7 & n.2), are readily distinguishable on their facts.  First, in a

8    number of those cases, the plaintiffs therein had alleged numerous acts of wrongdoing,

9    which, when viewed collectively, were found sufficient to state a claim.  See, e.g., Braden

10   v. Wal-Mart Stores, Inc., 588 F.3d 585, 596 & n.7 (8th Cir. 2009) (denying motion to

11   dismiss given "totality of the specific allegations in [the] case"); Bouvy v. Analog Devices,

12   Inc., No. 19-CV-881 DMS (BLM), 2020 WL 3448385, at *9 (S.D. Cal. June 24, 2020)

13   (denying motion to dismiss where plaintiff, in addition to higher-cost shares, "specifically

14   allege[d] other indicia of imprudence" (internal quotation and citation omitted)).  In others,

15   there is no indication that the defendant therein submitted for the court's consideration

16   the same type of evidence regarding revenue sharing as defendants have submitted

17   here.  See, e.g., Tracey v. Mass. Inst. of Tech., No. CV 16-11620-NMG, 2017 WL

18   4478239, at *2 (D. Mass. Oct. 4, 2017) (declining to dismiss imprudence claim where

19   defendants only disputed whether "identical lower-cost investment options" were, in fact,

20   "identical").

21       To the extent the cases on which plaintiffs rely have held allegations identifying

22   lower-cost share classes are, without more, sufficient to state a claim for imprudence, the

23   Court is not persuaded by the reasoning therein, see, e.g., Kruger v. Novant Health, Inc.,

24   131 F. Supp. 3d 470, 476 (denying motion to dismiss where plaintiff alleged defendant

25   offered retail class shares instead of institutional class shares),[12] and, indeed, the Ninth

26

27        [12] Retail class shares are generally "more expensive share classes . . . targeted at
     smaller investors with less bargaining power," whereas institutional class shares are
28   "lower cost shares . . . targeted at institutional investors with more assets, generally $1

9

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Circuit would appear to hold to the contrary, see Tibble v. Edison Int'l, 729 F.3d 1110,

2   1135 (9th Cir. 2013), vacated on other grounds, 575 U.S. 523 (2015) (rejecting argument

3   that, in lieu of "retail-class mutual funds," fiduciary "should have offered only . . .

4   'institutional' funds"; finding "[t]here are simply too many relevant considerations for a

5   fiduciary, for that type of bright-line approach to prudence to be tenable").

6       Accordingly, plaintiffs fail to state an imprudence claim predicated on a

7   comparison of share classes.[13]

8                   c.      **Collective Trusts and Separate Accounts**

9       Plaintiffs allege the Committee Defendants acted imprudently by failing to

10  investigate collective trusts and separate accounts as less costly alternatives to mutual

11  funds.  (See Compl. ¶ 110.)

12      As defendants point out, however, "plans are under no duty to offer alternatives to

13  mutual funds, even when the plaintiffs argue they are markedly superior."  See Moitoso v.

14  FMR LLC, No. CV 18-12122-WGY, 2020 WL 1495938, at *13 (D. Mass. Mar. 27, 2020);

15  see also Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009) (noting, "[w]e see

16  nothing in the [ERISA] statute that requires plan fiduciaries to include any particular mix

17  of investment vehicles in their plan").  Further, collective trusts and separate accounts

18  "differ so much from mutual funds . . . that other courts have found it impossible to make

19  an 'apples-to-oranges' comparison of the two."  See Moitoso, 2020 WL 1495938, at *14.

20  For example, unlike mutual funds, collective trusts and separate accounts "are not

21  subject to the reporting, governance, and transparency requirements of the Securities Act

22  of 1933, 15 U.S.C. § 77a et seq., and the Investment Company Act of 1940, 15 U.S.C.

23

24  _____

    million or more, and therefore greater bargaining power."  (See Compl. ¶ 85.)

25

26      [13] To the extent plaintiffs seek to draw an inference of imprudence from their
    allegation that the Plan's investment options "stayed relatively unchanged from 2013 until
    2019" (see Compl. ¶ 101), the Court notes that the record before it appears to contradict
27  such assertion (see, e.g., RJN, filed June 15, 2020, Ex. 9 (announcing to Plan
    participants, effective December 29, 2017, replacement of six mutual funds and changes
28  to share class of thirteen mutual funds offered in Plan)).

§ 80a-1 et seq." See id. Consequently, it is "inappropriate to compare [these] distinct investment vehicles solely by cost, since their essential features differ so significantly." See White v. Chevron Corp., No. 16-CV-0793-PJH, 2016 WL 4502808, at *9, *12 (N.D. Cal. Aug. 29, 2016) (dismissing imprudence claim where plaintiffs alleged plan fiduciaries "'could have' provided," inter alia, less costly separate accounts as investment options).

Accordingly, plaintiffs fail to state an imprudence claim predicated on a comparison of mutual funds with collective trusts and separate accounts.[14]

### 2.    Breach of Fiduciary Duty of Loyalty

Plaintiffs allege the Committee Defendants breached their fiduciary duty of loyalty by offering funds managed by companies that are investors in Salesforce. (See Compl. ¶ 119.) Specifically, plaintiffs allege, "affiliates" of Fidelity Investments, Inc. ("Fidelity"), which owns a large number of Salesforce shares, "served as the Plan's recordkeeper and investment manager of some of the Plan's investments." (See id. ¶ 117.) Further, plaintiffs allege, Fidelity Contrafund, the "largest mutual fund investment in Salesforce," is also the "largest single actively managed non-target date investment in the Plan." (See id.) Similarly, plaintiffs allege, JPMorgan Chase, "[a]nother investment manager," is "the 8th largest owner of Salesforce shares as of December 31, 2019." (See id. ¶ 118.) According to plaintiffs, these relationships "created an indisputable conflict of interest for the Plan's fiduciaries." (See id. ¶ 119.)

Under ERISA, a fiduciary is required to act "solely in the interest of the [plan's] participants . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." See 29 U.S.C. § 1104(a)(1)(A); see also Howard, 100 F.3d at 1488 (holding "ERISA fiduciary must act for the exclusive benefit of plan beneficiaries").

---

[14] As set forth above, plaintiffs fail to make an adequate showing based on any of the above-discussed challenges to investment options offered in the Plan, and, consequently, whether those challenges to investment are viewed individually or collectively, plaintiffs fail to state an imprudence claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendants argue plaintiffs fail to allege facts "from which it can plausibly be

2    inferred that the Plan's fiduciaries subjectively intended to benefit either themselves or a

3    third party at the expense of the Plan's participants."  (See Mot. to Dismiss at 19:5-14.)

4    In particular, as defendants point out, plaintiffs' allegations that the above-referenced

5    relationships "created an indisputable conflict of interest for the Plan's fiduciaries" by

6    "prevent[ing] the Plan's fiduciaries from (1) critically reviewing the fees or performance of

7    the Fidelity and JPMorgan Chase branded investments . . ., and (2) making decisions

8    with an eye single to the interests of plan participants" (see Compl. ¶ 119 (internal

9    quotations omitted)), are wholly conclusory and, consequently, insufficient to state a

10   claim.  See, e.g., White, 2017 WL 2352137, at *8-9 (dismissing breach of loyalty claim

11   where plaintiff "allege[d] no facts showing any benefit to [defendant] resulting from"

12   shareholder's revenue sharing agreement and role as plan's recordkeeper).

13          **3.    Conclusion: First Claim for Relief**

14          Having failed to plead facts sufficient to support a finding that the Committee

15   Defendants breached their fiduciary duties of prudence and loyalty, plaintiffs' First Claim

16   for Relief is subject to dismissal.

17   **B.    Second Claim for Relief: Failure to Adequately Monitor Other Fiduciaries**

18          In their Second Claim for Relief, plaintiffs allege the Monitoring Defendants

19   breached their fiduciary monitoring duties in the following respects: (1) failing to monitor

20   and evaluate the performance of the Committee Defendants as to "imprudent actions and

21   omissions," (2) failing to monitor the processes by which Plan investments and possible

22   alternatives were evaluated, and (3) failing to remove Committee members whose

23   performances were inadequate.  (See Compl. ¶ 131.)

24          Plaintiffs' Second Claim for Relief is, as defendants point out, derivative of the First

25   Claim for Relief, and, as discussed above, plaintiffs' First Claim for Relief is subject to

26   dismissal.  Consequently, plaintiffs' Second Claim for Relief necessarily fails.  See, e.g.,

27   Dorman v. Charles Schwab Corp., No. 17-cv-00285, 2018 WL 6803738, at *7 (N.D. Cal.

28   Sept. 20, 2018).

**C.**     **Request for Jury Trial**

Defendants argue "ERISA actions for breach of fiduciary duty are equitable in nature," and thus "there is no right to a jury trial."  (<u>See</u> Mot. to Dismiss at 21:11-19.)

As the instant complaint will be dismissed, the Court does not further address this issue at this time.

**CONCLUSION**

For the reasons stated, defendants' motion to dismiss is hereby GRANTED, and the Complaint is hereby DISMISSED, with leave to amend.  Plaintiffs' First Amended Complaint, if any, shall be filed no later than October 23, 2020.

**IT IS SO ORDERED.**

Dated: October 5, 2020

MAXINE M. CHESNEY
United States District Judge