1

2

3

4               IN THE UNITED STATES DISTRICT COURT

5           FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7   TIM DAVIS, et al., individually and on          Case No. 20-cv-01753-MMC
    behalf of all others similarly situated,
8
                        Plaintiffs,                  **ORDER GRANTING DEFENDANTS'**
9                                                    **MOTION TO DISMISS; DISMISSING**
            v.                                       **FIRST AMENDED COMPLAINT**
10                                                   **WITHOUT FURTHER LEAVE TO**
    SALESFORCE.COM, INC., et al.,                    **AMEND**
11
                        Defendants.
12

13         Before the Court is defendants Salesforce.com, Inc. ("Salesforce"), Board of

14   Directors of Salesforce ("Board"), Marc Benioff ("Benioff"), The Investment Advisory

15   Committee ("Committee"), Joseph Allanson ("Allanson"), Stan Dunlap ("Dunlap"), and

16   Joachim Wettermark's ("Wettermark") Motion, filed December 7, 2020, "to Dismiss

17   Plaintiffs' First Amended Complaint."  Plaintiffs have filed opposition, to which defendants

18   have replied.  Having considered the papers submitted in support of and in opposition to

19   the motion, the Court rules as follows.[1]

20                              **BACKGROUND**

21         Plaintiffs are former Salesforce employees who participated in the Salesforce

22   401(k) Plan ("the Plan").  (See First Am. Compl. ("FAC") ¶¶ 20-23.)  In 2000, the Plan

23   was established by Salesforce to provide benefits to eligible Salesforce and

24   "Salesforce.com, Foundation" employees.  (See id. ¶ 51.)  The Plan is a "defined

25   contribution plan," i.e., a plan wherein participants' benefits are "based solely upon the

26   amount contributed to [participants'] accounts," as well as "any income, expense, gains

27   _____

28         [1] By order filed March 1, 2021, the Court took the matter under submission.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    and losses, and any forfeitures . . . which may be allocated to such participant's account."

2    (See id. ¶ 53.)

3         As of December 31, 2018, the Plan had over $2 billion in assets and offered

4    twenty-seven investment options, as well as a brokerage link, through which link

5    participants "had access to additional investment options."  (See FAC ¶¶ 63-64.)

6         By the instant action, plaintiffs allege defendants breached their fiduciary duties to

7    the Plan and Plan participants in violation of the Employee Retirement Income Security

8    Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  (See FAC ¶ 10.)  In particular, plaintiffs

9    allege the Committee, Allanson, Dunlap, and Wettermark (collectively, "Committee

10   Defendants") breached their fiduciary duty of prudence by selecting and retaining

11   investment options with high costs relative to other, comparable investments, as well as

12   by failing "to investigate the availability of lower-cost share classes of certain mutual

13   funds in the Plan."  (See id. ¶ 130.)  Plaintiffs also allege the Board, Salesforce, and

14   Benioff (collectively, "Monitoring Defendants") breached their fiduciary monitoring duty by

15   failing to adequately monitor the Committee Defendants.  (See id. ¶¶ 135-38.)

16        Based on the above allegations, plaintiffs assert two Claims for Relief under

17   ERISA: (1) a claim against the Committee Defendants for breach of the fiduciary duty of

18   prudence; and (2) a claim against the Monitoring Defendants for failing to adequately

19   monitor the Committee Defendants.

20                                 **LEGAL STANDARD**

21        Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be

22   based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

23   under a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696,

24   699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of

25   the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v.

26   Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a

27   complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

28   allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his

1   entitlement to relief requires more than labels and conclusions, and a formulaic recitation

2   of the elements of a cause of action will not do."  See id. (internal quotation, citation, and

3   alteration omitted).

4          In analyzing a motion to dismiss, a district court must accept as true all material

5   allegations in the complaint and construe them in the light most favorable to the

6   nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.1986).  "To

7   survive a motion to dismiss, a complaint must contain sufficient factual material, accepted

8   as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S.

9   662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be

10  enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.

11  Courts "are not bound to accept as true a legal conclusion couched as a factual

12  allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

13

14         By order dated October 5, 2020 ("October 5 Order"), the Court dismissed with

15  leave to amend each of the claims asserted in plaintiffs' initial complaint, after which

16  ruling plaintiffs filed the FAC, reasserting imprudence and failure to monitor.[2]  By the

17  instant motion, defendants contend plaintiffs' operative pleading is again subject to

18  dismissal for failure to state a claim.

19  **A.      First Claim for Relief**

20         As noted, in their First Claim for Relief, plaintiffs allege the Committee Defendants

21  breached their fiduciary duty of prudence by selecting and retaining costly investment

22  options.  In that regard, plaintiffs allege the following "factors" demonstrate the Committee

23  Defendants "ran the Plan in an imprudent manner" (see FAC ¶ 67): (1) "almost half of the

24  Plan's core investments" chosen by defendants "were much more expensive than

25  comparable investments found in similarly-sized plans," as demonstrated by comparisons

26

27         _____

          [2] Plaintiffs have not reasserted in the FAC a claim that the Committee Defendants
28  breached their fiduciary duty of loyalty.

3

to the "ICI Median Fee" and "ICI Avg. Fee" (see id. ¶ 69);[3] (2) defendants "failed to prudently monitor the Plan to determine whether the Plan was invested in the lowest-cost share class available for the Plan's mutual funds" (see id. ¶ 75); (3) defendants failed to consider passively managed funds as alternatives to "the actively managed funds in the Plan" (see id. ¶ 108);[4] (4) defendants failed to "investigate the availability of lower cost JPMorgan collective trusts" (see id. ¶ 113);[5] and (5) defendants "failed to select the most prudent investments for the Plan" based on comparisons to the "5-Year Risk/Return Statistics" of "identical lower-cost share funds as well as other materially similar funds" (see id. ¶¶ 115, 119).

Under ERISA, a plan fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries," see 29 U.S.C. § 1104(a)(1), and must do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims," see 29 U.S.C. § 1104(a)(1)(B). To evaluate whether a plan fiduciary has breached his fiduciary duty of prudence, the Court focuses "not only on the merits of the transaction, but also on the thoroughness of the investigation into the merits of the transaction." See Howard v.

---

[3] The ICI Median Fee and ICI Average Fee are, respectively, the median percentile and average "asset-weighted mutual fund expense ratio[] as a percentage of assets among plans with audited 401(k) filings in the BrightScope database by mutual fund investment objective and plan assets." See The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans (2017), https://www.ici.org/pdf/20_ppr_dcplan_profile_401k.pdf at 74; see also id. at 67.

[4] "Actively managed funds, which have a mix of securities selected in the belief they will beat the market, have higher fees, to account for the work of the investment managers of such funds and their associates, whereas passively managed funds, or index funds, are designed to mimic a market index such as Standard & Poor's 500 and offer both diversity of investment and comparatively low fees." (See Order, filed Oct. 5, 2020, at 4 n.3 (internal quotations and citation omitted).)

[5] Collective trusts, also known as "CITs" or commingled pools, are "administered by banks or trust companies," consist of "a mix of assets such as stocks, bonds and cash," and have "much lower" costs given their "simple disclosure requirements" and inability to "advertise or issue formal prospectuses." (See FAC at 34 n.21, ¶ 109.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1   <u>Shay</u>, 100 F.3d 1484, 1488 (9th Cir. 1996).  "Because the content of the duty of prudence

2   turns on the circumstances . . . prevailing at the time the fiduciary acts, the appropriate

3   inquiry will necessarily be context specific."  <u>Fifth Third Bancorp v. Dudenhoeffer</u>, 573

4   U.S. 409, 425 (2014) (internal quotation and citation omitted).

5          **1.      ICI Median and Average Fee**

6          In the FAC, plaintiffs assert defendants were imprudent in retaining eleven actively

7   managed funds with expense ratios that were higher than the ICI Median Fee and ICI

8   Average Fee for "comparable investments found in similarly-sized plans."  (<u>See</u> FAC

9   ¶ 69.)

10         As set forth in the October 5 Order, however, the Court previously found plaintiffs

11  failed to state a viable claim based on such comparisons to the ICI Median Fee because

12  "the ICI Median Fee reflects the fees of both passively and actively managed funds" and,

13  as explained in the October 5 Order and later herein, passively managed funds are not

14  "meaningful benchmarks" for actively managed funds.  (<u>See</u> Order, filed Oct. 5, 2020, at

15  6:6-8 & n.9; <u>see also</u> <u>infra</u> Section A.3.)

16         Although plaintiffs have, in the FAC, added comparisons of expense ratios of

17  actively managed funds offered in the Plan to the ICI Average Fee, those comparisons

18  are insufficient to support an imprudence claim, as the ICI Average Fee, like the ICI

19  Median Fee, reflects the fees of both passively and actively managed funds.  <u>See</u> The

20  BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans (2017),

21  https://www.ici.org/pdf/20_ppr_dcplan_profile_401k.pdf at 67.

22          Accordingly, plaintiffs fail to state an imprudence claim predicated on

23  comparisons to the ICI Median Fee and ICI Average Fee.

24         **2.      Lower-Cost Share Classes**

25         In the FAC, plaintiffs assert, as they did in their initial complaint, that defendants

26  were imprudent in failing to substitute the lowest-cost share class for eleven actively

27  managed mutual funds offered in the Plan.  In that regard, plaintiffs' allegations remain

28  essentially the same as the allegations previously found deficient by the Court.

Specifically, plaintiffs again identify two lower-cost share classes, Class R5 and R6, as substitutes for nine JPMorgan SmartRetirement Institutional Class funds offered in the Plan, as well as one lower-cost share class for two Fidelity funds offered in the Plan,[6] all of which lower-cost share classes, plaintiffs allege, are "the same in every respect other than price [as] their less expensive counterparts." (See FAC ¶¶ 78, 82.)

As set forth in the October 5 Order, however, judicially noticeable IRS Form 5500 filings for the Plan[7] indicate the fees charged in connection with the JPMorgan SmartRetirement funds "were used to pay for recordkeeping and other administrative services provided to the Plan, an arrangement which frequently inure[s] to the benefit of ERISA plans." (See Order, filed Oct. 5, 2020, at 8:17-9:44 (alteration in original) (internal quotations and citations omitted)). "Known as 'revenue sharing,' this arrangement provides 'an obvious alternative explanation' for why the Plan did not offer the lowest-cost share class for those funds" (see id. at 8:24-9:4 (internal citation omitted)), and plaintiffs' conclusory allegations that, given the "discrepancy in prices of the share classes," there was "no benefit to choosing a more expensive share class" (see FAC ¶¶ 81-82), do not

---

[6] The Court notes the lower-cost share classes proposed by plaintiffs as substitutes for the two Fidelity mutual funds appear to be a different investment vehicle. (See FAC ¶ 78 (identifying "Fidelity Contra Commingled Pool" and "Fidelity Diversified International Commingled Pool" as lower-cost share class for "Fidelity Contra Class K" and "Fidelity Diversified International Class K," respectively).)

[7] The Court previously granted defendants' unopposed request for judicial notice of IRS Form 5500 filings from 2012-2018. (See Order, filed Oct. 5, 2020, at 2 n.2.) Defendants have not refiled that request in connection with the instant motion, apparently on the assumption those documents remain before the Court. To the extent plaintiffs now object to the Court's consideration of the documents, on the asserted ground such consideration would convert the instant motion to a motion for summary judgment (see Opp. at 3 n.6), the objection is overruled for the reason that a court may, without converting a motion to dismiss to a motion for summary judgment, take judicial notice of "an adjudicative fact" that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). Here, plaintiffs do not dispute the accuracy of any Form 5500 filings and, in their FAC, repeatedly cite to the 2018 Form 5500 filing. (See, e.g., FAC ¶¶ 25, 27); see also White v. Chevron Corp., No. 16-cv-0793-PJH, 2017 WL 2352137, at *5 (N.D. Cal. May 31, 2017), aff'd, 752 F. App'x 453 (9th Cir. 2018) (taking judicial notice of Form 5500 filings).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    suffice to render plaintiffs' imprudence claim plausible.

2        Further, as explained in the October 5 Order, the majority of the cases on which

3    plaintiffs rely in arguing courts have accepted allegations similar to those pled in the FAC

4    are readily distinguishable on their facts.  (See Order, filed Oct. 5, 2020, at 9:5-20.)

5        In particular, in a majority of those cases (see Opp. at 9:13-22 & n.9; 12:26-14:12),

6    "the plaintiffs therein had alleged numerous acts of wrongdoing, which, when viewed

7    collectively, were found sufficient to state a claim" (see Order, filed Oct. 5, 2020, at 9:7-

8    9); see, e.g., Bouvy v. Analog Devices, Inc., No. 19-CV-881 DMS (BLM), 2020 WL

9    3448385, at *9 (S.D. Cal. June 24, 2020) (denying motion to dismiss where plaintiff, in

10   addition to higher-cost shares, "specifically allege[d] other indicia of imprudence"; noting

11   plan allegedly "retained funds that historically underperformed" and "used expensive,

12   actively managed" funds affiliated with plan's recordkeeper "as default selections");

13   Lorenz v. Safeway, Inc., 241 F. Supp. 3d 1005, 1018-19 (N.D. Cal. 2017), abrogated on

14   other grounds by Rollins v. Dignity Health, 338 F. Supp. 3d 1025 (N.D. Cal. 2018)

15   (holding plaintiffs' allegations, when "viewed collectively," were sufficient to state

16   imprudence claim; noting funds offered in plan allegedly were managed by company

17   "affiliated with the [p]lan's recordkeeper" and, when funds were selected for inclusion in

18   plan, "had no meaningful record of performance"); Urakhchin v. Allianz Asset Mgmt. of

19   Am., No. SACV 15-1614-JLS (JCGx), 2016 WL 4507117, at *7 (C.D. Cal. Aug. 5, 2016)

20   (finding plaintiffs' allegations, when considered "[t]ogether," were sufficient to state

21   imprudence claim; noting plan offered investment options allegedly affiliated with

22   defendant corporation "to benefit the [defendant corporation] family").

23       In the remaining cases, wherein courts have held allegations identifying lower-cost

24   share classes are, without more, sufficient to state a claim for imprudence, the Court, as

25   set forth in the October 5 Order, is not persuaded by the reasoning therein, and, indeed,

26   the Ninth Circuit would appear to hold to the contrary.  (See Order, filed Oct. 5, 2020, at

27   9:21-10:5 (citing Tibble v. Edison Int'l, 729 F.3d 1110, 1135 (9th Cir. 2013), vacated on

28   other grounds, 575 U.S. 523 (2015) (rejecting argument that, in lieu of "retail-class mutual

United States District Court
Northern District of California

1 funds," fiduciary "should have offered only . . . 'institutional' funds";[8] finding "[t]here are

2 simply too many relevant considerations for a fiduciary, for that type of bright-line

3 approach to prudence to be tenable"));[9] see also White, 2017 WL 2352137, at *13-14

4 (finding "ample authority holds that merely alleging that a plan offered retail rather than

5 institutional share classes is insufficient to carry a claim for fiduciary breach").[10]

6          Accordingly, plaintiffs fail to state an imprudence claim predicated on a

7 comparison of share classes.

8          **3.     Actively Managed Funds**

9          In the FAC, plaintiffs assert, as they did in their initial complaint, that the

10 Committee Defendants acted imprudently by retaining nine actively managed JPMorgan

11 SmartRetirement funds when less costly passively managed funds were available.

12          The Court previously dismissed plaintiffs' imprudence claim to the extent such

13 claim was based on a comparison of actively managed funds with passively managed

14 funds because, inter alia, "[p]assively managed funds . . . ordinarily cannot serve as

15 meaningful benchmarks for actively managed funds" given that "the two types of funds

---

16

17          [8] "Retail class shares are generally more expensive share classes . . . targeted at
smaller investors with less bargaining power, whereas institutional class shares are lower
18 cost shares . . . targeted at institutional investors with more assets, generally $1 million or
more, and therefore greater bargaining power." (See Order, filed Oct. 5, 2020, at 9 n.12
19 (internal quotations and citation omitted).)

20          [9] Although, as plaintiffs point out, the Ninth Circuit, in Tibble, affirmed the district
court's finding that the defendant "had been imprudent in deciding to include retail-class
21 shares of three specific mutual funds in the Plan menu," the Ninth Circuit noted "[t]he
basis of liability was not the mere inclusion of retail-class shares," but, rather, the
22 defendant's "fail[ure] to investigate the possibility of institutional-share class alternatives."
See id. at 1137. Here, however, plaintiffs have failed to allege any facts sufficient to
23 create a plausible inference that defendants failed to investigate the possibility of lower-
cost share classes.

24          [10] Although plaintiffs contend White is "distinguishable from the instant case"
25 because plaintiffs here, unlike the plaintiffs in White, "do[] not challenge the overall
investment lineup" (see Opp. at 11:11-14 (alteration in original) (internal quotation and
26 citation omitted)), plaintiffs misconstrue the allegations in that case. Specifically, the
plaintiffs in White argued they were not seeking to challenge "the entire lineup of funds"
27 offered in the plan at issue, but, instead, like plaintiffs in the instant case, were seeking to
challenge "specific funds for which defendants had available lower-cost options." See
28 White, 2017 WL 2352137, at *12 (internal quotation omitted).

United States District Court
Northern District of California

1   have different aims, different risks, and different potential rewards that cater to different

2   investors."  (See Order, filed Oct. 5, 2020, at 6:6-8 (internal quotation and citation

3   omitted)); see also Meiners v. Wells Fargo & Co., 898 F.3d 820, 822 (8th Cir. 2018)

4   (holding, "[t]o show that a prudent fiduciary in like circumstances would have selected a

5   different fund based on the cost or performance of the selected fund, a plaintiff must

6   provide a sound basis for comparison—a meaningful benchmark" (internal quotation

7   omitted)).

8       In the FAC, plaintiffs have added the following allegations: (1) a number of

9   "statistics bear out the vast underperformance of actively managed funds over passively

10  managed funds over different stretches of 5 to 10 year periods beginning in 2008" (see

11  FAC ¶ 93; see also id. ¶¶ 91-92, 102); (2) JPMorgan offered, at all relevant times, "a

12  target date blend series that had some passive funds underlying it and had an overall

13  lower cost structure" as well as higher returns "than the purely actively managed

14  SmartRetirement counterparts" (see id. ¶¶ 106-07); and (3) "[d]efendants' actions in

15  overwhelmingly favoring actively managed funds[] plausibly show that they failed to

16  consider the pros and cons of offering actively managed investments vs. passively

17  managed investments" (see id. ¶ 105).

18      As noted above and as set forth in the October 5 Order, however, passively

19  managed funds are not meaningful benchmarks for actively managed funds given their

20  essential differences (see Order, filed Oct. 5, 2020, at 6:6-22), and, indeed, plaintiffs

21  acknowledge in the FAC that "higher-cost mutual funds may outperform a less-expensive

22  option, such as a passively-managed index fund, over the short term" (see FAC ¶ 90).

23  Thus, although the JPMorgan target date blend funds and JPMorgan SmartRetirement

24  funds may have some similarities, the JPMorgan target date blend funds, which plaintiffs

25  allege have "some passive funds underlying [them]" (see FAC ¶ 106), are not meaningful

26  benchmarks for the actively managed JPMorgan SmartRetirement funds.  See Meiners,

27  898 F.3d at 823 (finding allegation that "cheaper alternative investments with some

28  similarities" to funds offered in plan "exist[ed] in the marketplace" insufficient to state

1   imprudence claim (emphasis omitted)); see also Davis v. Wash. U., 960 F.3d 478, 485-85

2   (8th Cir. 2020) (finding claim based on comparison of actively and passively managed

3   funds subject to dismissal; noting, "[c]omparing apples and oranges is not a way to show

4   that one is better or worse than the other").

5        Even assuming, arguendo, the JPMorgan target date blend funds can be used for

6   purposes of comparison, plaintiffs' allegation that those funds outperformed the

7   JPMorgan SmartRetirement funds is based on one-year, three-year, and five-year returns

8   and, as set forth in the October 5 Order, such returns "are not sufficiently long-term to

9   state a plausible claim of imprudence."  (See Order, filed Oct. 5, 2020, at 7:15-16

10  (internal quotation and citation omitted)); see also Wehner v. Genentech, Inc., No. 20-cv-

11  06894-WHO, 2021 WL 507599, at *9 (N.D. Cal. Feb. 9, 2021) (holding, "[t]here is nothing

12  presumptively imprudent about a retirement plan retaining investments through periods of

13  underperformance as part of a long-range investment strategy"; finding allegations of

14  underperformance "based on annual returns over three-and five-year periods" insufficient

15  to state imprudence claim (internal quotation and citation omitted)).  Moreover, based on

16  the returns alleged in the FAC, the JPMorgan SmartRetirement funds experienced, at

17  most, "a small disparity in performance" over a three-year and five-year period relative to

18  the JPMorgan target date blend funds, the biggest differential being approximately

19  0.55%.  (See FAC ¶ 107); see also Patterson v. Stanley, No. 16-cv-6568 (RJS), 2019 WL

20  4934834, at *10 (S.D.N.Y. Oct. 7, 2019) (noting, "consistent, ten-year underperformance

21  may support a duty of prudence claim" if underperformance is "substantial"; finding

22  "difference of less than one percentage point" in average annual return insufficient to

23  support imprudence claim).

24        Next, as defendants point out, where a 401(k) plan, like the Plan at issue, offers a

25  "variety of investment options," including lower-cost passively managed options, "[t]here

26  is nothing imprudent about offering a concentration of actively managed funds."  See

27  Kong v. Trader Joe's Co., No CV2005790PAJEMX, 2020 WL 7062395, at *4 (N.D. Cal.

28  Nov. 30, 2020) (internal quotations and citations omitted) (dismissing imprudence claim

United States District Court
Northern District of California

United States District Court
Northern District of California

1   where plan offered both actively and passively managed funds; rejecting plaintiffs'

2   argument that "[d]efendants' actions in overwhelmingly favoring actively managed funds

3   plausibly show that they failed to consider the pros and cons of offering actively managed

4   investments vs. passively managed investments" (internal quotation and citation

5   omitted)).

6        Accordingly, plaintiffs fail to state an imprudence claim predicated on a

7   comparison of actively managed funds and passively managed funds.

8        **4.      Collective Trusts**

9        In the FAC, plaintiffs assert, as they did in their initial complaint, that the

10  Committee Defendants acted imprudently by failing to investigate collective trusts as less

11  costly alternatives to funds offered in the Plan.  (See FAC ¶¶ 109-13.)

12       The Court previously dismissed plaintiff's imprudence claim to the extent such

13  claim was based on a comparison of mutual funds with collective trusts.  In particular, the

14  Court found "plans are under no duty to offer alternatives to mutual funds" and, given that

15  the "essential features" of collective trusts and mutual funds differ "so significantly," it is

16  "inappropriate to compare [such] distinct investment vehicles solely by cost."  (See Order,

17  filed Oct. 5, 2020, at 10:12-13, 11:1-2 (internal quotations and citations omitted).)

18       In the FAC, plaintiffs have added allegations that (1) the Plan, in 2019, replaced

19  the nine JPMorgan SmartRetirement funds with "JPMorgan target date CITs," which had,

20  according to plaintiffs, "the same underlying investments and asset allocations as their

21  mutual fund counterparts" but had "better annual returns" and "a lower net expense ratio

22  than the mutual funds," and (2) the delay in making such replacement "cost Plan

23  participants millions of dollars."  (See FAC ¶¶ 112-13.)

24       The JPMorgan target date CITs are not, however, a "meaningful benchmark" for

25  the JPMorgan SmartRetirement funds.  See Meiners, 898 F.3d at 822.  In particular,

26  collective trusts, such as the JPMorgan target date CITs, are, as plaintiffs themselves

27  allege in the FAC, "[r]egulated by the Office of the Comptroller of the Currency rather

28  than the Securities and Exchange Commission, . . . have simple disclosure requirements,

1    and cannot advertise or issue formal prospectuses" (see FAC at 34 n.21; see also Order,

2    filed Oct. 5, 2020, at 10:20-11:1 (noting collective trusts, unlike mutual funds, "are not

3    subject to the reporting, governance, and transparency requirements of the Securities Act

4    of 1933, 15 U.S.C. § 77a et seq., and the Investment Company Act of 1940, 15 U.S.C.

5    § 80a-1 et seq." (internal quotation and citation omitted)), thereby rendering such

6    comparisons between mutual funds and collective trusts "inappropriate" (see Order, filed

7    Oct. 5, 2020, at 11:1-2 (internal citation omitted)); see also Tibble, 729 F.3d at 1134

8    (holding "[m]utual funds . . . have a variety of unique regulatory and transparency

9    features that make it an apples-to-oranges comparison to judge them against" investment

10   alternatives "such as 'commingled pools'").

11         Even assuming, arguendo, the JPMorgan target date CITs can be used for

12   purposes of comparison, plaintiffs' new allegations regarding those investments are, for

13   the same reasons as set forth above with respect to the JPMorgan target date blend

14   funds, insufficient to state an imprudence claim.  Specifically, the periods during which

15   the JPMorgan SmartRetirement funds are alleged to have underperformed relative to the

16   JPMorgan CITs are not of sufficient length to support an inference of imprudence (see

17   Order, filed Oct. 5, 2020, at 7:15-16); see also Wehner, 2021 WL 507599, at *9, nor is the

18   degree of alleged underperformance substantial enough to support such an inference

19   (see FAC ¶ 112); see also Patterson, 2019 WL 4934834, at *10.

20         Accordingly, plaintiffs fail to state an imprudence claim predicated on a

21   comparison of mutual funds with collective trusts.

22         **5.    Other "Materially Similar Funds"**

23         In the FAC, plaintiffs now point to the Plan's Investment Policy, which includes a

24   statement that "[t]he Committee will select investment options that are liquid, diversified,

25   and cost efficient" (see FAC ¶ 114 (quoting Investment Policy at 8)), and allege, "[w]ith

26   respect to cost efficiency, the Committee utterly failed to select the most prudent

27   investments for the Plan based on several criteria under the Modern Portfolio Theory,"

28   which theory, according to plaintiffs, utilizes various metrics to evaluate investments (see

12

1    id. ¶¶ 115, 117).  In that regard, plaintiffs allege, the JPMorgan SmartRetirement funds

2    "lagged behind . . . materially similar funds" based on "5-Year Risk/Return Statistics as of

3    the third quarter of 2019."  (See id. ¶ 119 (listing funds).)

4           To the extent the "materially similar funds" are funds previously discussed above,

5    such as the JPMorgan target date blend funds, comparisons between those funds and

6    the JPMorgan SmartRetirement funds are, for the reasons discussed above, insufficient

7    to state a claim for relief.  As to the remaining allegedly comparable funds, plaintiffs'

8    allegation that such funds are "materially similar" to the JPMorgan SmartRetirement

9    funds is, as defendants point out, too conclusory to support a claim for relief.  See Iqbal,

10   556 U.S. at 678 (holding "[t]hreadbare recitals of the elements of a cause of action,

11   supported by mere conclusory statements" do not suffice to state claim for relief); see

12   also Anderson v. Intel Corp., No. 19-cv-04618-LHK, 2021 WL 229235, at *8-9 (N.D. Cal.

13   Jan. 21, 2021) (dismissing imprudence claim based on "fee comparisons" to allegedly

14   "comparable investment alternatives"; finding, where plaintiffs "merely refer[red] to the

15   funds as 'comparable' or 'similar,'" plaintiffs "failed to adequately plead factual allegations

16   to support their claim that [they] have provided a meaningful benchmark against which to

17   compare the fees incurred by the . . . funds" offered in plan).

18          Accordingly, plaintiffs fail to state an imprudence claim predicated on a

19   comparison of mutual funds with other allegedly materially similar funds.

20          **6.      Conclusion: First Claim for Relief**

21          Plaintiffs' having failed to make an adequate showing based on any of the above-

22   discussed challenges to investment options offered in the Plan, whether those challenges

23   are viewed individually or collectively, the First Claim for Relief is subject to dismissal,

24   and, given plaintiffs' failure to cure previously identified deficiencies, such dismissal will

25   be without further leave to amend.

26   **B.     Second Claim for Relief**

27          In their Second Claim for Relief, plaintiffs allege, as they did in their initial

28   complaint, that the Monitoring Defendants breached their fiduciary monitoring duties in

United States District Court
Northern District of California

the following respects: (1) failing to monitor and evaluate the performance of the Committee Defendants as to "imprudent actions and omissions," (2) failing to monitor the processes by which Plan investments and possible alternatives were evaluated, and (3) failing to remove Committee members whose performances were inadequate.  (See FAC ¶ 138.)

In the October 5 Order, the Court, having dismissed plaintiffs' First Claim for Relief, dismissed the Second Claim for Relief as derivative of the First Claim for Relief. (See Order, filed Oct. 5, 2020, at 12:24-28.)

In the FAC, plaintiffs' Second Claim for Relief is, again, derivative of the First Claim for Relief, and, as discussed above, the First Claim for Relief is subject to dismissal.  Consequently, the Second Claim for Relief likewise is subject to dismissal, and, as with the First Claim for Relief, such dismissal will be without further leave to amend.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss is hereby GRANTED, and the instant action is hereby DISMISSED.

**IT IS SO ORDERED.**

Dated: April 15, 2021

MAXINE M. CHESNEY
United States District Judge