United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGOR MIGUEL, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>SALESFORCE.COM, INC., et al.,<br><br>    Defendants. | Case No. 20-cv-01753-MMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED CLASS ACTION COMPLAINT**<br><br>Re: Dkt. No. 101 |

Before the Court is plaintiffs Gregor Miguel and Amanda Bredlow's "Motion," filed May 30, 2023, "for Leave to File Amended Class Action Complaint." Defendants Salesforce.com, Inc. ("Salesforce"), Board of Directors of Salesforce, Marc Benioff, the Investment Advisory Committee ("Committee"), Joseph Allanson, Stan Dunlap, and Joachim Wettermark have filed opposition, to which plaintiffs have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

Plaintiffs are former Salesforce employees who participated in the Salesforce 401(k) Plan ("the Plan"). (See First Am. Compl. ("FAC") ¶¶ 21-22, Dkt. No. 38.) Salesforce established the Plan in 2000 to provide benefits to eligible employees. Specifically, the Plan is a "defined contribution plan," i.e., a plan wherein participants' benefits are "based solely upon the amount contributed to [participants'] accounts," as well as "any income, expense, gains and losses, and any forfeitures . . . allocated to such

---

[1] By order filed August 18, 2023, the Court took the matter under submission.

1  participant's account." (See FAC ¶ 53.) As of December 31, 2018, the Plan offered
2  "twenty-seven investment options" that were "mutual funds," as well as "additional
3  investment options through a brokerage link," and had over $2 billion in "assets under
4  management." (See FAC ¶¶ 63-64.)

On March 11, 2020, plaintiffs filed their initial complaint in the instant action. On October 23, 2020, plaintiffs filed the FAC, the operative complaint, alleging defendants breached their fiduciary duties to the Plan and Plan participants in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), and based thereon, asserting two claims for relief, specifically, a claim for breach of the fiduciary duty of prudence and a claim for failure to adequately monitor fiduciaries. By order filed April 15, 2021, the Court granted defendants' motion to dismiss the FAC.

Plaintiffs appealed, and, on April 8, 2022, the Ninth Circuit affirmed in part and reversed in part. Specifically, the Ninth Circuit agreed with the Court that "plaintiffs have not plausibly alleged that defendants breached the duty of prudence by failing to adequately consider passively managed mutual fund alternatives to the actively managed funds offered by the [P]lan," see Davis v. Salesforce.com, Inc., 2022 WL 1055557, at *2 n.1 (9th Cir. Apr. 8, 2022), but also found "plaintiffs have stated a plausible claim that defendants imprudently failed to select lower-cost share classes or collective investment trusts with substantially identical underlying assets," see id. at *1. Accordingly, the Ninth Circuit remanded the action.

Thereafter, on February 23, 2023, the Court granted plaintiffs' motion for class certification. A trial is set for May 6, 2024.

**DISCUSSION**

By the instant motion, plaintiffs seek to amend the FAC by adding "allegations in support of [their] imprudent investment claims." (See Pls.' Mot. for Leave to File Am. Class Action Compl. ("Pls.' Mot.") ¶ 10, Dkt. No. 101.) Specifically, plaintiffs seek to add allegations that "the Plan's fiduciaries relied almost exclusively on the advice of Bridgebay" (see Pls.' Mot. Ex. A ("PAC") ¶ 106), the Committee's "investment consultant"

2

(see PAC ¶ 44), that the "Bridgebay data relied on by the fiduciaries was deficient" (see PAC ¶ 110), and that there were "many superior performing alternatives" to the funds used by the Plan (see PAC ¶ 112, 118, 124); plaintiffs further seek to add a number of charts comparing historical performances of funds used by the Plan with those of "known superior performing alternatives which should have been selected" instead (see PAC ¶¶ 109, 111, 112, 114, 119, 122; see also PAC, Attach. A).  Plaintiffs assert "[t]hese alternatives are apples-to-apples comparisons, unlike the previous' complaint's comparison of active funds to passive funds deemed inappropriate by the Court."  (See Reply in Supp. of Pls.' Mot. ("Pls.' Reply") at 9:3-5, Dkt. No. 106.)  According to plaintiffs, their "additional factual allegations cure the defects in the previous complaint[,] thus allowing [p]laintiffs to sufficiently plead [d]efendants breached their fiduciary duties by selecting and retaining imprudent investments for the Plan."  (See id. at 11:9-12.)

In opposing the proposed amendments, defendants first point out that plaintiffs, by citing Rule 15(a)(2) of the Federal Rules of Civil Procedure, "have briefed the wrong rule" (see Defs.' Opp'n to Pls.' Mot. ("Defs.' Opp'n") at 3:15, Dkt. No. 104), in that "where a party seeks leave to amend after the date specified in a scheduling order, Rule 16(b) applies" (see id. at 3:18-19 (quoting Mogel v. Hanni, 2014 WL 120682, at *2 (N.D. Cal. Jan. 10, 2014)) (alterations omitted)).  In particular, where a court has issued a pretrial scheduling order containing a deadline to amend the pleadings, a motion to amend is governed by Rule 16 of the Federal Rules of Civil Procedure.  See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992) (noting, "[o]nce the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 which established a timetable for amending pleadings[,] that rule's standards controlled").  In the instant case, the Court issued its pretrial scheduling order on July 8, 2022, by which order the Court set October 3, 2022, as the deadline for amendment of the pleadings, i.e., nearly eight months before the filing of the instant motion.

Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent."  See Fed. R. Civ. P. 16(b); see also Akey v. Placer Cnty., 2017 WL

1831944, at *3 (E.D. Cal. May 8, 2017) (noting "[a] district court has broad discretion to grant or deny a continuance" (internal quotation and citation omitted)). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment" and that party's "reasons for seeking [such] modification." See Johnson, 975 F.2d at 609; see also Sako v. Wells Fargo Bank, Nat. Ass'n, 2015 WL 5022326, at *1 (S.D. Cal. Aug. 24, 2015) (noting "Rule 16's 'good cause' standard is more stringent than a Rule 15 analysis"). If the party seeking amendment "was not diligent, the inquiry should end." See Johnson, 975 F.2d at 609. If, on the other hand, "'good cause' is shown, the party must demonstrate [the proposed] amendment is proper under Rule 15." See Sako, 2015 WL 5022326, at *1.

Here, plaintiffs assert they diligently filed the instant motion, in that "[i]t was not until approximately mid-April of 2023" that the proffered additional "information had been discovered." (See Pls.' Mot. ¶ 20 (citing PAC ¶¶ 105-06, 119, 125).) In particular, plaintiffs point to the "2019 Bridgebay Report" and the "April 2019 meeting minutes of Salesforce's Investment Advisory Committee," both of which, plaintiffs allege, show funds in the Plan "had serious performance issues" and that defendants knew about those issues. (See PAC ¶¶ 106, 119, 125.) Such "recently discovered evidence," according to plaintiffs, "reveal[s] the failings and imprudence of the process used by the Salesforce fiduciaries." (See PAC ¶¶ 105-06.) The Court is not persuaded.

First, the majority of plaintiffs' proposed allegations consist of performance comparisons between funds used by the Plan and plaintiffs' proffered "superior performing alternatives" (see, e.g., PAC ¶ 109), which allegations appear to rest not on any recently discovered evidence, but rather, on data from Morningstar, an investment database (see, e.g., PAC ¶ 109 (analyzing "three target date series from [a] Morningstar peer group . . . [as] against the JPMorgan SmartRetirement series" used by the Plan)). There is no indication that such Morningstar data was unavailable prior to the deadline to

4

amend.  Rather, plaintiffs appear to allege the opposite (see PAC ¶ 109 (alleging "the JPMorgan SmartRetirement series was an imprudent selection" given "data that would have been available to the Plan at the start of the Class Period")), and, indeed, have not disputed defendants' assertion that such data was "public information that was always readily available to [p]laintiffs" (see Defs.' Opp'n at 5:4-5).

As to the remainder of the proposed allegations, namely, those regarding Bridgebay (see PAC ¶¶ 106, 110), plaintiffs seek to allege the 2019 Bridgebay Report "shows that the Plan's fiduciaries relied almost exclusively on the advice of Bridgebay" (see PAC ¶ 106), that "a review of the recently acquired Bridgebay data from the 2014 period[] shows . . . i[t] failed to take into account the performance of [the JPMorgan series of target date] funds as against their peers in any meaningful way" (see PAC ¶ 110), and that "[t]hus, the Committee failed to make an accurate and prudent decision for the JPMorgan target date series" (see PAC ¶ 110).  Defendants, in their opposition, assert the 2019 Bridgebay Report "was produced on March 29, 2023 (not April 27, 2023, as [p]laintiffs state)" (see Defs.' Opp'n at 5:1 n.1), which plaintiffs, in their reply, do not refute, and, "[c]ourts have held that waiting two months after discovering new facts to bring a motion to amend does not constitute diligence under Rule 16," see Sako, 2015 WL 5022326, at *2 (collecting cases).[2]  Further, plaintiffs concede "the other documents [they] relied on were produced in October of 2022."  (See Pls.' Reply at 4:18-19.)

In any event, the Ninth Circuit has already found "plaintiffs have adequately alleged a claim for breach of the duty of prudence" predicated on the Plan's use of the JPMorgan target date series.  See Davis, 2022 WL 1055557, at *2.  Plaintiffs essentially seek to bolster their claim for breach of the duty of prudence by belatedly proffering allegations that do not alter the substance of their claim.  Such circumstances do not constitute good cause for amendment under Rule 16.  Cf. Akey, 2017 WL 1831944, at *8

---

[2] As defendants also point out, plaintiffs "fail to explain how the Committee's reliance on expert advice from a fiduciary investment consultant shows imprudence." (See Defs.' Opp'n at 5:8-9.)

(finding good cause for amendment under Rule 16 where "plaintiffs were sufficiently diligent in pursuing discovery" and "rel[ied] heavily on information acquired through recent discovery" to "address [previously identified] shortcomings").

## CONCLUSION

For all of the reasons set forth above, the Court finds plaintiffs have failed to demonstrate good cause for amendment under Rule 16,[3] and, accordingly, plaintiffs' motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated: September 8, 2023

MAXINE M. CHESNEY
United States District Judge

---

[3] In light of this finding, the Court does not address herein the parties' arguments with respect to Rule 15.