IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGOR MIGUEL, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SALESFORCE.COM, INC., et al.,<br><br>　　　　Defendants. | Case No. 20-cv-01753-MMC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT ROBERT E. CONNER** |

Before the Court is defendants' "Motion to Exclude the Testimony of Plaintiffs' Expert Robert E. Conner" ("Defs.' Mot.," Doc. No. 117), filed November 14, 2023. Plaintiffs have filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." (See Fed. R. Evid. 702.)

Here, plaintiffs' expert, Robert E. Conner, has offered an opinion that defendants'

---

[1] By order filed February 9, 2024, the Court took the matter under submission.

oversight of the Salesforce 401(k) Plan ("the Plan") was not "consistent with the standard of care of a prudent fiduciary," and that the Plan participants incurred "losses . . . as a result of the Plan fiduciaries' failure to provide oversight." (See Serron Decl. in Supp. of Defs.' Mot. for Summ. J. ("Serron Decl.") Ex. 75 ("Expert Report of Robert E. Connor [sic]" ("Conner Rpt.")) ¶ 1, Doc. No. 113-23.)

Defendants seek an order excluding Conner's opinions, arguing he is "not qualified to opine on the standard of care applicable to such fiduciaries under ERISA" (see Defs.' Mot. at 13:22–23) and that his opinions are based on "flawed methodology and unreliable information" (see id. at 15:6–7; 16:8–9; 18:7–8).

**A. Experience**

In arguing Conner lacks the requisite experience, defendants note he has never "served on a 401(k) or other pension plan committee" (see Defs.' Mot. at 13:23–24) and has never "served as an expert witness where the ERISA fiduciary standard of care has been at issue" (see id. at 14:6–7).

In response, plaintiffs point to Conner's "decades of experience in the securities industry." (See Pls.' Opp'n. to Defs.' Mot. to Exclude Testimony of Robert E. Conner at 10:13–14 ("Pls.' Opp'n."), Doc. No. 127, citing Conner Rpt. ¶ 2.) From 1977 to 1980, Conner "managed discretionary accounts" and "provided research and transactional coverage of non-discretionary accounts" including pension plans, after which, from 1983 to 1998, he managed equity portfolios for pension accounts as a portfolio manager (see Conner Rpt. at 23–24), all of which experience included managing ERISA plan assets (see Serron Decl. Ex. 36 (Dep. Tr. of Robert Conner ("Conner Tr.")) at 14:13–21, 23:13–17, 27:13–17, Doc. No. 112-36). Since 1998, Conner has worked at two expert witness firms, supporting litigation in "the securities and commodities industry" and in "investment industry disputes." (See Conner Rpt. at 23.)

The Court finds defendants' criticism as to Conner's experience goes to the weight of any opinions he may offer, not their admissibility. See San Francisco Baykeeper v. City of Sunnyvale, 627 F.Supp.3d 1085, 1093 (N.D. Cal. Sep. 12, 2022) (finding engineer

qualified to testify as expert on cost estimates; noting "lack of specialization in a particular field goes to the weight of the expert's opinion, not admissibility"); see also Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1015 (9th Cir. 2004) (holding "Rule 702 contemplates a broad conception of expert qualifications"; noting rule is "broadly phrased and intended to embrace more than a narrow definition of a qualified expert") (emphasis in original) (internal quotations and citations omitted).[2]

### B. Methodology and Supporting Information

In support of plaintiffs' claims, Conner opines the Committee breached its fiduciary duty by choosing "investments and share classes with higher expenses even though identical investments with lower expenses were available" by: (1) as to Target Date Funds ("TDFs"), "fail[ing] to choose or switch to the JPMorgan Smart Retirement 2020 R5 share class . . . or the R6 share class when they became available"; and (2) failing to offer the "Fidelity Contra Commingled Pool (CIT)" and "Fidelity Contra Fund K6." (See Conner Rpt. Part VI.B, ¶¶ 24, 40.)

#### 1. JPMorgan SmartRetirement Target Date Funds

Defendants first argue Conner's criticism of the Committee's failure to substitute the Institutional share class of the JPMorgan TDFs for the R5 share class is "based on flawed methodology and unreliable information" because "the underlying factual record indisputably shows that the Plan was invested in the Institutional (later renamed R5) class from the beginning of the Class Period through December 2017." (See Defs.' Mot. at 16:20–22.) Plaintiffs do not dispute that the R5 and Institutional share classes are identical. (See Pls.' Opp'n. at 17:18–21.) Instead, they argue the "essential part" of

---

[2] To the extent defendants are contending Conner's experience is outdated because, after 1998, he has acted as an expert witness rather than an investment manager, such argument goes to the weight of Conner's testimony, not its admissibility, particularly where, as here, defendants point to no intervening change in the law. Cf. Dishman v. BBVA Compass Bank, No. 1:10-cv-205, 2011 WL 13217108, at *3 (E.D. Tex. Mar. 3, 2011) (precluding proposed expert from testifying as to fiduciary duties of trustees where witness's "limited experience in trusts [was] acquired more than a decade ago" and before enactment of relevant statute).

3

Conner's TDF share class opinion "focuses on . . . why the R6 share class should have replaced the more expensive [Institutional/R5] share classes" more promptly (see id. at 17:8–16), and, as plaintiffs also point out, the supporting data contained in the exhibit submitted in connection with Conner's report can support a calculation demonstrating the difference between the Institutional/R5 and R6 share classes. In light thereof, the Court finds the above-described error goes to the weight, rather than the admissibility, of Conner's opinions.

Defendants next criticize Conner for "ignor[ing] the benefit of revenue sharing to offset Plan administrative expenses, which was provided by the R5 class but not the R6 class." (See Defs.' Mot. at 9:9–11.) Although Conner concedes revenue sharing is "appl[ied] toward expenses with the fund" (see Conner Tr. 188:7–17), he states he did not account for the revenue sharing credit paid by the Institutional/R5 share class in his damages calculations because revenue sharing "makes recordkeeping and administrative costs interdependent with plan participant returns" and "reduces the investment returns plan participants receive" (see Serron Decl. Ex. 74 (Rebuttal Expert Report of Robert E. Conner ("Conner Rebuttal")) ¶ 20, Doc. No. 113-22).[3]

The Court finds the above challenge is primarily directed at "the merits of" plaintiffs' claims, rather than at "whether the Report is based on sufficient facts and data" under Rule 702. See, e.g., Harris v. Koenig, 815 F.Supp.2d 6, 9 (D.D.C. June 27, 2011) (declining to exclude expert testimony where challenge focused on merits); see also Fed. Trade Comm'n. v. DIRECTV, INC., et al., 15-cv-01129-HSG, 2017 WL 412263, at *2 (N.D. Cal. Jan. 31, 2017) (noting "the trial court's gatekeeping function is much less critical in a bench trial because there [is] little danger of prejudicing the judge, who can, after hearing the expert's testimony or opinion, determine what, if any, weight it

---

[3] Defendants argue Conner's opinion as to revenue sharing is not "grounded in any analysis of the facts of this case" (see Defs.' Reply at 7:20–22), but offer no evidence undermining Conner's conclusion that revenue sharing reduces "the listed rate of return" on plan investments. (See Conner Rebuttal ¶ 20.c.)

4

1  deserves") (internal quotation and citation omitted).

### 2. Collective Investment Trusts

Defendants also seek to exclude Conner's opinion "that the [d]efendants breached their fiduciary duty of prudence by failing to replace the JPMorgan TDFs, the Fidelity Contrafund K, and the Fidelity Diversified International Fund K on the Plan's investment menu with cheaper CITs sooner than they did." (See Defs.' Mot. at 10:16–18.) They argue "Conner's methodology is flawed because he inappropriately compares mutual funds . . . with CITs, which are entirely different investment vehicles with different features." (See id. at 17:22–24, 18:3–6.) In particular, defendants point to the limited "information publicly available to Plan participants regarding CITs," the short performance history available for plaintiffs' preferred CITs, and the fact that "mutual funds and CITs are regulated by different entities." (See id. at 18:3–6.)

Conner does not dispute the above-referenced differences (see Conner Tr. at 248:23 –251:9, 88:24–89:7, 110:18–112:10), but offers his opinion that such concerns do not permit a prudent fiduciary to "rule out" CITs entirely (see id. at 250:16–17; see also Conner Rebuttal ¶¶ 8–9). The Court again finds defendants' challenge goes to the merits of plaintiffs' claims rather than the admissibility of Conner's opinions in support thereof.

### 3. Damages

Defendants first seek to exclude Conner's damages calculations because he "did not obtain the [underlying] data himself and failed to properly assure its accuracy." (See Defs.' Mot. at 18:20–25.) As plaintiffs note, however, "[e]xpert testimony that involves considerations by a party's other experts is admissible, especially when the information has been reviewed by the expert in question." (See Pls.' Opp'n. at 13:1–2); see also United States v. Soulard, 730 F.2d 1292, 1299 (affirming admission of expert testimony by "summarizing witness" where expert was not involved in "investigation or original preparation" of case but "had sufficient experience to judge another person's work"); SiteLock LLC v. GoDaddy.com, 562 F.Supp.3d 283, 329–30 (D. Ariz. Mar. 2, 2022) (holding expert's reliance on "grunt work" performed by another "is not cause for

exclusion"). Here, Conner testified that he "verified the numbers" upon which he relied and provided his own opinions based thereon. (See Conner Tr. 128:3–19.) Accordingly, the Court declines to exclude Conner's testimony on the basis of his use of such data.

Defendants additionally argue Conner's damages calculations "suffer[] from several fundamental flaws" (see Defs.' Mot. at 19:1), specifically: (1) "treat[ing] the R5 and Institutional share classes of the JPMorgan TDFs as distinct share classes"; (2) failing to account for "the difference in expense ratios var[ying] over [the 2015 to 2017] period and . . . by vintage"; and (3) "multiplying his calculation of expense ratio differences by Plan assets in the challenged funds as of year-end" when "expenses are accrued throughout the year rather than at year end" (see id. at 19:1–13).

As to the first of the above-listed "flaws," the Court declines to exclude Conner's damages calculations because, as discussed above, the mistake can be isolated from the rest of Conner's analysis.

As to the second "flaw," Conner acknowledges that the "share class expense ratios can change at different times causing smaller or larger spreads," but explains that the difference "[t]ypically . . . is about 0.10%," which is the figure he opted to use. (See Conner Rebuttal ¶ 19.) An expert's arguably "improper[] focus[] on damages at a particular point in time" is a "question of fact," rather than grounds for exclusion. See Brotherston v. Putnam Inv., 907 F.3d 17, 34 (1st Cir. 2018).

Similarly, as to the third "flaw," the Court finds the parties' respective experts' disagreement as to whether it is preferable to use monthly asset averages, as was done by defendants' expert (see Serron Decl. Ex. 37 (Expert Report of D. Lee Heavner ("Heavner Rpt.")) ¶ 38, Doc. No. 113-37), or instead to use year-end assets, as was done by plaintiffs' expert (see Conner Rpt. at 23), goes to the weight of each such opinion, not its admissibility.

Accordingly, the Court declines to exclude Conner's opinions on revenue sharing, CITs, and share class damages.

//

### C. Opinions as to Excluded Claims

Lastly, defendants seek to exclude Conner's opinions to the extent they pertain to claims brought solely in the Second Amended Complaint, which plaintiffs were not permitted to file, and to claims whose dismissal from the First Amended Complaint was affirmed by the Ninth Circuit. Plaintiffs agree such opinions "may be stricken." (See Opp'n. at 10 n.1.)

### CONCLUSION

For the reasons stated above, defendants' motion to exclude, with the exception of the opinions referenced in Part C of this order, is hereby DENIED.

**IT IS SO ORDERED.**

Dated: March 20, 2024

MAXINE M. CHESNEY
United States District Judge