UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGOR MIGUEL and AMANDA BREDLOW, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>SALESFORCE.COM, INC., BOARD OF DIRECTORS OF SALESFORCE.COM, INC., MARC BENIOFF, THE INVESTMENT ADVISORY COMMITTEE, JOSEPH ALLANSON, STAN DUNLAP, and JOACHIM WETTERMARK,<br><br>Defendants. | Case No. 3:20-cv-01753-MMC<br><br>**CORRECTED JOINT PRETRIAL STATEMENT** |

Pursuant to the Court's Amended Pretrial Preparation Order (ECF No. 111), Plaintiffs, Gregor Miguel and Amanda Bredlow (collectively "Plaintiffs"), and Defendants, Salesforce, Inc., Board of Directors of Salesforce, Inc., Marc Benioff, the 401(k) Plan Committee, Joseph Allanson, Stan Dunlap, and Joachim Wettermark (collectively "Defendants" and together with Plaintiffs, the "Parties"), hereby submit the following Joint Pretrial Statement.

1.  **Substance of the Action**

Plaintiffs allege that throughout the class period, Defendants breached their fiduciary duties to the Salesforce 401(k) Plan (the "Plan") and its participants in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 20 U.S.C. § 1001 et seq. Plaintiffs allege that Defendants breached their duties in failing to identify and make a timely switch to lower cost funds that were identical, or nearly identical, to funds already in the Plan. Specifically, Plaintiffs allege that Defendants acted imprudently by retaining higher-cost versions of the JP Morgan Institutional Target Date Funds ("TDFs"), the Fidelity Contrafund, and the Fidelity Diversified International and failed to adequately investigate

JOINT PRETRIAL STATEMENT
1

lower-cost versions of each fund. Plaintiffs also allege that Defendants Salesforce, Inc., Board of Directors of Salesforce, Inc. and Marc Benioff breached their fiduciary duties by failing to adequately monitor the 401(k) Committee ("Committee"). Defendants deny Plaintiffs' allegations and maintain that the Committee followed a prudent process and reasonably retained the challenged funds in the Plan.

## 2. Relief Claimed

For the reasons stated herein and in the expert report of Plaintiffs' expert Robert Conner, Plaintiffs are seeking monetary relief of over $5,000,000 dollars plus prejudgment interest to be allocated among the participants' individual accounts in proportion to the accounts' losses. Plaintiffs also seek an award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) and the common fund doctrine, an award of costs pursuant to 29 U.S.C. § 1132(g), and case contribution awards to each of the named plaintiffs to be taken out of the common fund award should Plaintiffs succeed at trial.

Defendants deny Plaintiffs' allegations and seek judgment in favor of Defendants and an award of costs and attorney's fees pursuant to 29 U.S.C. § 1132(g).

## 3. Factual Issues Remaining and Stipulations of Fact

### A. Plaintiffs' Statement of Disputed Issues of Fact

1. It is disputed that the 401(k) Committee ("Committee") included members with expertise or qualifications relevant to the selection of investments.
2. It is disputed whether the Committee had adequate fiduciary training.
3. It is disputed whether the Committee deferred to Bridgebay's advice without engaging in a critical review of its own.

4. It is disputed whether Committee members had adequate time to review Bridgebay reports prior to Committee meetings.

5. It is disputed whether the Committee adequately diversified the Plan's investments.

6. It is disputed that the Plan's recordkeeper, Fidelity Retirement Services ("Fidelity"), made regular presentations to the Committee on ERISA fiduciary developments.

7. It is disputed whether the 2013 and 2016 versions of the IPS had a mandatory requirement that an investment option have at least 5 years of verifiable investment performance in order to be offered in the Plan.

8. It is disputed that revenue sharing is a common arrangement under which payments received from a plan's investment options are used to compensate a plan service provider to pay recordkeeping fees owed to the Plan's recordkeeper.

9. It is disputed whether there were caps on recordkeeping fees.

10. It is disputed as to how revenue sharing functioned in the Plan, including how, when, and in what amounts any fund expenses paid by Plan participants were returned to the Plan.

11. It is disputed whether revenue sharing justified the Committee's decision to retain higher-cost investments.

12. It is disputed whether the practice of revenue sharing harmed or benefited Plan participants.

13. It is disputed that the Committee adequately selected, monitored, and retained the JPMorgan Smartretirement TDFs throughout the Class Period.

14. It is disputed that the JPMorgan Smartretirement R6 class had a *nominally* lower expense ratio (i.e., fee) than the Institutional/R5 share class.

15. It is disputed whether the Committee thoroughly considered the benefits of the R6 share class prior to 2017.

16. It is disputed whether the Institutional/R5 class was cheaper than the R6 share class on a net cost basis.

17. It is disputed whether revenue sharing resulted in lower, or even equal, recordkeeping fees being paid than a flat fee charge.

18. It is disputed whether the JPMorgan Institutional/R5 share class title has any effect on Plaintiffs' claims or damages calculations.

19. It is disputed that the Committee prudently selected, monitored, and retained the Fidelity Contrafund Class K and the Fidelity Diversified International Class K.

20. It is disputed that the Committee regularly or appropriately considered offering CITs during the Class Period.

21. It is disputed whether the Plan's Investment Policy Statements ("IPSs") were barriers to adopting CIT investments.

22. It is disputed whether the Plan's advisor, Bridgebay recommended the plan switch to CITs.

23. It is disputed that the Contrafund K and the Contrafund CIT are entirely different investment vehicles with entirely separate underlying investment portfolios from their mutual fund counterparts.

24. It is disputed that the Contrafund K had an effective expense ratio of 41 basis points (net of recordkeeping offset), which was lower than the Contrafund CIT's expense ratio of 43 basis points and whether the performance fees present in the Contrafund K but absent in the CIT version outweighed any net-cost-benefit of the recordkeeping offset.

25. It is disputed that Fidelity believed CITs were inappropriate investments for the plan because of a purported lack of a performance history for the Contrafund CIT and the lack of a Morningstar rating.

JOINT PRETRIAL STATEMENT

4

26. It is disputed whether CITs are materially dis-similar to their mutual fund counterparts.

**B.     Defendants' Statement of Factual Issues Remaining**

Defendants dispute that the issues set forth in Plaintiffs' statement of factual issues remaining are proper factual issues for trial, are relevant to or required by any claim or defense at issue, are genuine disputes as to any material fact, and/or have been preserved by Plaintiffs as live issues in this case. Defendants assert that the following factual issues remain:

1. Whether the Committee followed a reasonable process for monitoring the JPMorgan TDFs, Fidelity Contrafund, and Fidelity Diversified International Fund on the Plan's investment menu.
2. Whether the revenue sharing paid by the JPMorgan TDFs, Fidelity Contrafund K, and Fidelity Diversified International Fund K was used for the benefit of the Plan and its participants.
3. Whether the Institutional/R5 shares of the JPMorgan TDFs were cheaper on a net cost basis than the R6 shares between the start of the Class Period and December 29, 2017.
4. Whether and to what extent the underlying investments of the JPMorgan TDFs were different from the underlying investments of the JPMCB Passive Blend CITs.
5. Whether the Fidelity Contrafund K was cheaper on a net cost basis than the Fidelity Contrafund CIT between the start of the Class Period and the fourth quarter of 2017.
6. Whether and to what extent the underlying investments of the Fidelity Contrafund and Diversified International Fund were different from the underlying investments of the Contrafund CIT and International CIT, respectively.
7. Whether it was reasonable and prudent for the Defendants to consider the lack of publicly available information regarding CITs, the lack of Morningstar ratings for the CITs, the differing regulatory regimes governing CITs as compared to mutual funds, and the relatively short track records of the JPMCB Passive Blend CITs, Contrafund CIT, and International CIT in its decision-making over whether to switch the Plan to these CITs from their mutual fund counterparts.

5

8. The losses (if any) suffered by the Plan as a result of Defendants' alleged misconduct.

C. **Stipulated Facts:**

Plaintiffs and Defendants hereby stipulate and agree as follows:

1. Plaintiffs bring this action pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, including 29 U.S.C. § 1109 and 29 U.S.C. § 1132, against the Salesforce 401(k) Plan's fiduciaries, which include Salesforce, Inc. ("Salesforce" or the "Company"), the Board of Directors of Salesforce ("Board") and its members during the Class Period, and the 401(k) Plan Committee ("Committee") and its members during the Class Period for breach of their fiduciary duties.

2. This Court has subject matter jurisdiction.

3. Venue is proper in this District.

4. The Salesforce 401(k) Plan (the "Plan") is a defined contribution, individual account plan that meets the standards for tax-favored status under I.R.C. § 401(k).

5. The Plan became effective on June 1, 2000.

6. As of December 31, 2021, the Plan had over 50,000 participants with account balances and assets totaling over $6 billion.

7. Defendants are fiduciaries to the extent that they have performed one or more of the functions set forth in ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

8. Plaintiffs are former participants in the Plan during the Class Period.

9. Plaintiffs bring this lawsuit pursuant to Federal Rule of Civil Procedure 23 on behalf of the class described as: All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between March 11, 2014

through July 19, 2019 (the "Class Period") and invested in the Challenged Funds.

10. The class is certified only as to the Plaintiffs' claims for retrospective relief.

11. Plaintiff Gregor Miguel ("Miguel") is a former employee of Salesforce and a former participant of the Plan under 29 U.S.C. § 1002(7). During the Class Period, Mr. Miguel invested through the Plan in the JPMorgan SmartRetirement® 2055 Fund.

12. Plaintiff Amanda Bredlow ("Bredlow") is a former employee of Salesforce and a former participant of the Plan under 29 U.S.C. § 1002(7). During the Class Period, Ms. Bredlow invested through the Plan in the JPMorgan SmartRetirement® 2045 Fund.

13. Salesforce is a domestic corporation with its principal place of business in San Francisco, California. Salesforce is a customer relationship management solution that brings companies and customers together on one integrated CRM platform.

14. At all times relevant, Salesforce has been the Plan's sponsor.

15. The Plan's Investment Policy Statement ("IPS") details the roles and responsibilities of various parties in managing and administering Plan assets, as well as certain Plan objectives, and investment selection and monitoring criteria.

16. The 401(k) Plan Committee ("Committee") is the named fiduciary of the Plan. The Committee is responsible for selecting and reviewing the Plan's investment options.

17. During the Class Period, Joseph Allanson, Stan Dunlap, and Joachim Wettermark were members of the Committee.

18. The Plan is a single-employer 401(k) plan, in which participants direct the investment of their contributions into various investment options offered by the Plan. Each participant's account is credited with the participant contributions, employer matching contributions,

any discretionary contributions, and earnings or losses thereon.

19. The Plan pays Plan expenses from Plan assets.

20. During the Class Period, the available investment options of the Plan included certain actively and passive-managed funds (mutual funds) and a self-directed brokerage account.

21. Mutual funds are publicly-traded investment vehicles consisting of a pool of monetary contributions collected from many investors for the purpose of investing in a portfolio of equities, bonds, or other securities. Mutual funds are managed by professional investment advisors, who, like the mutual funds, are registered with the Securities and Exchange Commission ("SEC"). Mutual funds are subject to SEC regulation, and are required to provide certain investment and financial disclosures and information in the form of a prospectus.

22. In 2013, the Committee adopted an Investment Policy Statement ("IPS") setting forth guidelines for the Plan's investment program, which was updated in 2016.

23. During the Class Period, Plan assets were held in a trust by the Plan Trustee, Fidelity Management Trust Company. All investments and asset allocations were performed through this trust instrument.

24. The Plan retained Fidelity Investments Institutional Operations Company, Inc. ("Fidelity") to serve as trustee and to provide recordkeeping and administrative services.

25. On March 11, 2014, the beginning of the Class Period, the Plan used revenue sharing to pay recordkeeping and administrative fees owed to Fidelity.

26. In 2015, Fidelity changed its annual recordkeeping fee to a fixed dollar amount of $49 per participant.

27. In July 2017, Fidelity changed its annual recordkeeping fee from $49 to $37 per participant, effective October 1, 2017.

28. The Plan offered between 27 and 30 investment options during the Class Period, including JPMorgan SmartRetirement® series of target date funds (the "JPMorgan TDFs"), the Fidelity Contrafund K and Diversified International K mutual funds.

29. The JPMorgan TDFs are target date funds. A target date fund is an investment vehicle that is designed to offer an all-in-one retirement solution for participants through a portfolio of underlying funds that is supposed to shift to become more conservative as the assumed target retirement year approaches.

30. The Institutional share class of the JPMorgan TDFs was renamed the R5 share class as of April 3, 2017.

31. From the beginning of the Class Period to December 29, 2017, the Plan offered the JPMorgan TDFs in the Institutional/R5 share class.

32. JPMorgan announced the creation of the R6 class for its TDFs in November 2014.

33. On December 29, 2017, the JPMorgan TDFs in the R5 share class were replaced on the Plan's investment menu with the JPMorgan TDFs in the R6 share class.

34. On July 19, 2019, the JPMorgan TDFs in the R6 share class were replaced on the Plan's investment menu by the JPMCB SmartRetirement® Passive Blend CF series of collective trust target date funds ("JPMCB Passive Blend CITs").

35. From the beginning of the Class Period to the fourth quarter of 2017, the Fidelity Contrafund K mutual fund was included on the Plan's investment menu.

36. The Fidelity Contrafund Commingled Pool (CIT) was established January 17, 2014.

37. On December 29, 2017, the Fidelity Contrafund K was replaced on the Plan's investment menu with the Fidelity Contrafund K6.

38. On July 19, 2019, the Fidelity Contrafund K6 was replaced by the Fidelity Contrafund Commingled Pool collective investment trust ("Contrafund CIT").

39. From the beginning of the Class Period to the fourth quarter of 2017, the Fidelity Diversified International K mutual fund was included on the Plan's investment menu.

40. The Fidelity Diversified International Commingled Pool (CIT version) was established on December 13, 2013.

41. On December 29, 2017, the Fidelity Diversified International K fund was replaced on the Plan's investment menu with the Fidelity Diversified International K6 fund.

42. On July 19, 2019, the Fidelity Diversified International K6 was replaced by the Fidelity Diversified International Commingled Pool collective investment trust ("International CIT").

43. The JPMorgan SmartRetirement® Income Fund in the Institutional/R5 share class had an expense ratio of 55 basis points ("bps") from January 1, 2015 through October 31, 2015; 53 bps from November 1, 2015 through October 31, 2016; 53 bps from November 1, 2016 through October 31, 2017; and 51 bps from November 1, 2017 through December 31, 2017.

44. The JPMorgan SmartRetirement® 2020 Fund in the Institutional/R5 share class had an expense ratio of 63 bps from January 1, 2015 through October 31, 2015; 63 bps from November 1, 2015 through October 31, 2016; 60 bps from November 1, 2016 through October 31, 2017; and 55 bps from November 1, 2017 through December 31, 2017.

45. The JPMorgan SmartRetirement® 2025 Fund in the Institutional/R5 share class had an

expense ratio of 65 bps from January 1, 2015 through October 31, 2015; 65 bps from November 1, 2015 through October 31, 2016; 62 bps from November 1, 2016 through October 31, 2017; and 56 bps from November 1, 2017 through December 31, 2017.

46. The JPMorgan SmartRetirement® 2030 Fund in the Institutional/R5 share class had an expense ratio of 67 bps from January 1, 2015 through October 31, 2015; 67 bps from November 1, 2015 through October 31, 2016; 64 bps from November 1, 2016 through October 31, 2017; and 58 bps from November 1, 2017 through December 31, 2017.

47. The JPMorgan SmartRetirement® 2035 Fund in the Institutional/R5 share class had an expense ratio of 69 bps from January 1, 2015 through October 31, 2015; 69 bps from November 1, 2015 through October 31, 2016; 66 bps from November 1, 2016 through October 31, 2017; and 59 bps from November 1, 2017 through December 31, 2017.

48. The JPMorgan SmartRetirement® 2040 Fund in the Institutional/R5 share class had an expense ratio of 70 bps from January 1, 2015 through October 31, 2015; 70 bps from November 1, 2015 through October 31, 2016; 68 bps from November 1, 2016 through October 31, 2017; and 60 bps from November 1, 2017 through December 31, 2017.

49. The JPMorgan SmartRetirement® 2045 Fund in the Institutional/R5 share class had an expense ratio of 70 bps from January 1, 2015 through October 31, 2015; 70 bps from November 1, 2015 through October 31, 2016; 68 bps from November 1, 2016 through October 31, 2017; and 60 bps from November 1, 2017 through December 31, 2017.

50. The JPMorgan SmartRetirement® 2050 Fund in the Institutional/R5 share class had an expense ratio of 70 bps from January 1, 2015 through October 31, 2015; 70 bps from November 1, 2015 through October 31, 2016; 68 bps from November 1, 2016 through October 31, 2017; and 60 bps from November 1, 2017 through December 31, 2017.

51. The JPMorgan SmartRetirement® 2055 Fund in the Institutional/R5 share class had an

expense ratio of 72 bps from January 1, 2015 through October 31, 2015; 70 bps from November 1, 2015 through October 31, 2016; 68 bps from November 1, 2016 through October 31, 2017; and 60 bps from November 1, 2017 through December 31, 2017.

52. The Fidelity Contrafund K had an expense ratio of 56 bps from January 1, 2015 through February 28, 2015; 54 bps from March 01, 2015 through February 29, 2016; 61 bps from March 1, 2016 through February 28, 2017; and 58 bps from March 1, 2017 through December 31, 2017.

53. The Fidelity Contrafund K6 had an expense ratio of 45 bps from December 29, 2017 through July 19, 2019.

54. The Fidelity Diversified International Fund K had an expense ratio of 78 bps from January 1, 2015 through December 31, 2015; 87 bps from January 1, 2016 through December 31, 2016; and 92 bps from January 01, 2017 through December 31, 2017.

55. The Fidelity Diversified International Fund K6 had an expense ratio of 60 bps from December 29, 2017 through July 19, 2019.

56. Members of the Committee met at least quarterly and kept minutes of its meetings.

57. During the Class Period Bridgebay Financial, Inc., ("Bridgebay") acted as the Plan's investment consultant.

58. Bridgebay prepared quarterly investment reviews and attended the quarterly Committee meetings.

59. In 2018, Bridgebay conducted a target date provider search, which ultimately led to the Plan's switching from the JPMorgan TDFs to the JPMCB Passive Blend CITs effective July 19, 2019.

60. The Committee also retained John Aguirre of Wilson Sonsini Goodrich & Rosati to serve as its outside legal counsel.

4. **Legal Issues**

The parties submit that the following legal issues remain to be decided.

A. Whether Defendants breached the fiduciary duty of prudence under ERISA by not replacing the Institutional/R5 class of the JPMorgan TDFs on the Plan's investment menu with the R6 class between the start of the Class Period and December 29, 2017. *See* ERISA § 404(a), 29 U.S.C. § 1104(a); *Hughes v. Nw. Univ.*, 595 U.S. 170, 176-77 (2022).

B. Whether Defendants breached the fiduciary duty of prudence under ERISA by not replacing the JPMorgan TDFs on the Plan's investment menu with the JPMCB Passive Blend CITs prior to July 19, 2019. *See* ERISA § 404(a), 29 U.S.C. § 1104(a); *Hughes v. Nw. Univ.*, 595 U.S. 170, 176-77 (2022).

C. Whether Defendants breached the fiduciary duty of prudence under ERISA by not replacing the mutual fund versions of the Fidelity Contrafund and Diversified International Fund on the Plan's investment menu with the Contrafund CIT and International CIT prior to July 19, 2019. *See* ERISA § 404(a), 29 U.S.C. § 1104(a); *Hughes v. Nw. Univ.*, 595 U.S. 170, 176-77 (2022).

D. Whether Salesforce, the Board of Directors of Salesforce, or Marc Benioff breached the fiduciary duty to monitor the Committee under ERISA. *See* ERISA § 404(a), 29 U.S.C. § 1104(a).

E. Whether the Plan suffered a loss as a result of any breach of fiduciary duty. *See* ERISA § 409(a), 29 U.S.C. §§ 1109(a); ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2); *Call v. Sumitomo Bank of Cal.*, 881 F.2d 626, 632-633 (9th Cir. 1989).

F. Whether Plaintiffs are entitled to an award of their attorneys' fees and costs, and the amount of such fees and costs. *See* 29 U.S.C. § 1132(g).

JOINT PRETRIAL STATEMENT

      G.    Whether Defendants are entitled to an award of their attorneys' fees and costs, and the amount of such fees and costs. *See* 29 U.S.C. § 1132(g).

## 5. Length of Trial

The parties estimate that the trial will take five to seven court days to complete.

## 6. Status of Alternative Dispute Resolution

The parties originally scheduled a mediation conference through JAMS with mediator David Geronemus for June 29, 2023. However, the scheduled mediation conference was cancelled on June 21, 2023.

## 7. Witnesses

**The Plaintiffs are likely to call the following fact witnesses in their case in chief as if on cross examination:**

| | | |
|---|---|---|
| A. | Joseph Allanson: | 401(k) Plan Committee member |
| B. | Stan Dunlap: | 401(k) Plan Committee member |
| C. | Joachim Wettermark: | 401(k) Plan Committee member |
| E. | Kurt Hagen: | 401(k) Plan Committee member |
| L. | Craig Conway: | Compensation Committee member |
| P. | Linda Ruiz-Zaiko: | Bridgebay Financial, Inc. |
| Q. | Nicholas Zaiko: | Bridgebay Financial, Inc. |
| R. | Joanna Wagner: | FMR, LLC |
| S. | John Aguirre: | Wilson, Sonsini, Goodrich & Rosati |

**The Plaintiffs are likely to call the following expert witnesses in their case in chief as if on cross examination:**

    A.    Steven Case:    Defendants' process expert

    B.    D. Lee Heavner:    Defendants' damages expert

**The Plaintiffs are likely to call the following expert witnesses:**

    A.    Robert Conner:    Plaintiffs' expert

**The Defendants are likely to call the following fact witnesses:**

A. Joachim Wettermark

B. Joseph Allanson

C. Stan Dunlap

D. Linda Ruiz-Zaiko

E. Joanna Wagner

F. John Aguirre

G. Salesforce custodian of records

H. Fidelity custodian of records

**The Defendants are likely to call the following expert witnesses:**

A. Steven C. Case

B. D. Lee Heavner

Defendants reserve the right to object to the use of leading questions by Plaintiffs.

## 8. SIGNATURE OF TRIAL COUNSEL

The undersigned counsel for Plaintiff and Defendants, respectively, hereby declare that, in preparing this final pretrial statement, we have aimed for the just, speedy, and inexpensive resolution of this action.

Dated: April 10, 2024                                       Respectfully submitted,

/s/ *Mark K. Gyandoh*                                       /s/ *Eric G. Serron*
Mark K. Gyandoh                                             Eric G. Serron (*pro hac vice*)
James A. Wells                                              Paul J. Ondrasik, Jr. (*pro hac vice*)
Thomas J. Sinclair                                          Andrew J. Sloniewsky (*pro hac vice*)
CAPOZZI ADLER P.C.                                          Cannon Jurrens (*pro hac vice*)
312 Old Lancaster Road                                      STEPTOE LLP
Merion Station, PA 19066                                    1330 Connecticut Ave., NW
Telephone: (610) 890-0200                                   Washington, DC 20036
Facsimile: (717) 233-4103                                   Telephone: (202) 429-3000
E-mail: markg@capozziadler.com                              Facsimile: (202) 429-3902
        jayw@capozziadler.com                               E-mail: eserron@steptoe.com
        thomass@capozziadler.com                                    pondrasik@steptoe.com
                                                                    asloniewsky@steptoe.com
Donald R. Reavey                                                    cjurrens@steptoe.com
CAPOZZI ADLER P.C.
2933 North Front Street                                     Robyn Crowther (CA Bar #193840)
Harrisburg, PA 17110                                        STEPTOE LLP
Telephone: (610) 890-0200                                   633 West 5th Street, Suite 1900
Facsimile: (717) 233-4103                                   Los Angeles, CA 90071
E-mail: donr@capozziadler.com                               Telephone: (213) 439-9400
                                                            Facsimile: (213) 439-9599
Peter A. Muhic (pro hac pending)                            E-mail: rcrowther@steptoe.com
MUHIC LAW LLC
923 Haddonfield Road, Suite 300                             Elyse D. Echtman (*pro hac vice*)
Cherry Hill, NJ 08002                                       Justin Ben-Asher (*pro hac vice*)
Telephone: (856) 324-8252                                   STEPTOE LLP
Email: peter@muhiclaw.com                                   1114 Avenue of the Americas
                                                            New York, N.Y. 10036
ROSMAN & GERMAIN APC                                        Tel: (212) 506-3900, Fax: (212) 506-3950
Daniel L. Germain (Bar No. 143334)                          E-mail: eechtman@steptoe.com
5959 Topanga Canyon Boulevard                                       jbenasher@steptoe.com
Suite 360
Woodland Hills, CA 91367-7503                               Maria O'Keeffe (*pro hac vice pending*)
Telephone: (818) 788-0877                                   STEPTOE LLP
Facsimile: (818) 788-0885                                   227 West Monroe Street
E-mail: Germain@Lalawyer.com                                Suite 4700
                                                            Chicago, IL 60606
*Counsel for Plaintiffs*

Phone: (312) 577-1300
Facsimile: (312) 577-1370
E-mail: mokeeffe@steptoe.com

*Counsel for Defendants*