ROSMAN & GERMAIN APC
Daniel L. Germain (Bar No. 143334)
Rosman & Germain APC
5959 Topanga Canyon Boulevard. Ste. 360
Woodland Hills, CA  91367-7503
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
E-Mail: Germain@Lalawyer.com

*Counsel for Plaintiffs and the Settlement Class*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGOR MIGUEL and AMANDA BREDLOW,<br><br>Plaintiffs,<br><br>v.<br><br>SALEFORCE.COM INC., et al.<br><br>Defendants. | Case No. 3:20-cv-01753-MMC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION TO CONSOLIDATE ACTIONS, PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFY A CLASS FOR SETTLEMENT PURPOSES, APPROVE FORM AND MANNER OF CLASS NOTICE, SCHEDULE A FAIRNESS HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| CHRIS SIMONELLI, DAVID VILLARREAL, JOSEPH DOUILLARD, MARC RUNYARD, MARK TRACEY and ROBERT RAMIREZ,<br><br>Plaintiffs,<br><br>v.<br><br>SALEFORCE.COM INC., et al.<br><br>Defendants. | Date:         Sept. 27, 2024<br>Time:        9:00 a.m.<br>Location:  San Francisco Courthouse<br>Courtroom 7<br>19th Floor<br>450 Gold Gate Avenue<br>San Francisco, CA 95113<br>Judge:      Hon. Maxine Chesney |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that Plaintiffs, Gregor Miguel, Amanda Bredlow, Chris Simonelli, David Villarreal, Joseph Douillard, Marc Runyard, Mark Tracey and Robert Ramirez, (collectively, "Plaintiffs"), on behalf of the proposed Settlement Class and the Salesforce 401(k) Plan (the "Plan"),[1] hereby move (the "Motion"), before the Honorable Maxine Chesney and pursuant to Federal Rules of Civil Procedure 42 and 23, for entry of an Order that: (1) consolidates *Miguel, et. al. v. Salesforce.com, Inc. et al*., 3:20-cv-01753 and *Simonelli, et. al. v. Salesforce.com, Inc. et. al*., 24-cv-00813[2] Actions; (2) preliminarily approves the Settlement Agreement with Defendants, Salesforce.com, Inc., the Board of Directors of Salesforce.com, Inc., Marc Benioff, the Investment Advisory Committee, Joseph Allanson, Stan Dunlap, and Joachim Wettermark (collectively, "Defendants") and with Plaintiffs, the "Parties");[3]   (3) preliminarily certifies the proposed Settlement Class; (4) approves the proposed notice plan; and (5) sets a final approval hearing on September 27, 2024 or a date convenient for the Court at least 120 calendar days after the entry of a preliminary approval order. A proposed Preliminary Approval Order is attached as **Exhibit C** to the Settlement Agreement. The proposed Settlement Class is defined as follows:

> All persons who participated in the Salesforce 401(k) Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Salesforce 401(k) Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Salesforce 401(k) Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

The Class Period is March 11, 2014, through the date the Preliminary Approval Order is entered by the Court.

---

[1] The Plan is a legal entity that can sue and be sued. ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1). However, in a breach of fiduciary duty action such as this, the Plan is not a party.  Rather, pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants.

[2]  This case was incorrectly listed on the docket as *Villarreal et al. v. Salesforce.com, Inc. et al*. Plaintiffs request that the docket for the consolidated cases reflect this as *Simonelli, et al. v.Salesforce.com, Inc., et al*. and will refer to the case as "*Simonelli*" here.

[3] The Settlement Agreement and its exhibits are attached to the accompanying Declaration of Mark K. Gyandoh. Terms not defined herein shall have the same meaning as in the Settlement Agreement

The Class excludes Defendants Salesforce.com, Inc., the Board of Directors of Salesforce.com, Inc., Marc Benioff, the Investment Advisory committee, Joseph Allanson, Stan Dunlap, and Joachim Wettermark.

Plaintiffs propose the following schedule associated with the Notice Plan and Fairness Hearing:

| Event | Reference to Preliminary Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | If the Court deems necessary, on 9/27/24 at 9:00 a.m., or another date convenient for the Court |
| Settlement Administrator to set up settlement website and toll-free number | ¶ 9 | Within 30 days of entry of Preliminary Approval Order |
| Send Settlement Notice and Former Participant Claim Form to Class Members | ¶ 9 | Within 45 days of entry of Preliminary Approval Order |
| Final approval motion and applications for attorneys' fees, expenses, and case contribution awards | ¶ 10 | 45 days before Fairness Hearing |
| Independent Fiduciary report | Settlement Agreement ¶ 2.1.2 | Not later than 30 days before the Fairness Hearing |
| Deadline for filing of objections | ¶ 12 | Not later than 30 days before the Fairness Hearing |
| Deadline for Parties to respond to objections or file any additional papers in support of Settlement | ¶ 12 | Not later than 7 days before Fairness Hearing |
| Fairness Hearing | ¶ 7 | On a date convenient for the Court no sooner than 120 days after the date the Preliminary Approval Order is filed |

The Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the supporting Declaration of Mark K. Gyandoh ("Gyandoh Declaration") and all supporting papers, as well as the record in this litigation, and any other matters the Court may consider. Plaintiffs respectfully submit that the proposed settlement memorialized in the Settlement

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION TO CONSOLIDATE ACTIONS, PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFY A CLASS FOR SETTLEMENT PURPOSES, APPROVE FORM AND MANNER OF CLASS NOTICE, SCHEDULE A FAIRNESS HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 3:20-CV-00753-MMC
-2-

Agreement (the "Settlement") is fair, reasonable, and adequate, and should be preliminarily approved as that notice can be provided to the Settlement Class.

The Settlement is the product of arm's-length negotiations between the Parties and their counsel, all of whom comprehensively litigated this matter, are well-informed regarding all the issues in this litigation, and have significant experience in complex litigation of this type.

Pursuant to the inquiries provided in the Procedural Guidance for Class Action Settlement of this District,[4] Plaintiffs respond as follows:

    a.    Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.

A class was previously certified in the *Miguel* action (*see* ECF No. 96), but no class has yet been certified in the *Simonelli* action. Both actions substantially overlap. In denying the *Miguel* Plaintiffs' motion to amend the *Miguel* Complaint to add substantially the same claims currently in the *Simonelli* Complaint, this Court stated, *inter alia*, that "Plaintiffs essentially seek to bolster their claim for breach of the duty of prudence by belatedly proffering allegations that do not alter the substance of their claim." *See Miguel,* ECF No. 110, at 5. Plaintiffs seek certification of a class in the consolidated matters that differ slightly from the certified class in *Miguel* in that Plaintiffs seek a Class Period ending as of the date of the Preliminary Approval Order, instead of through July 29, 2019. See Niguel ECF Nos. 74, 93. Plaintiffs seek to extend the class period for purposes of settlement because the case is being consolidated with the *Simonelli* action and the class Plaintiffs seek to represent in *Simonelli* runs through the date of any judgment in that case. See *Simonelli* Complaint, ECF No. 1 at ¶ 48.

    b.    Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.

None.

The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.

---

[4] https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/

The class recovery under the settlement will be $1,350,000, which represents 13.5% of Plaintiffs' maximum recoverable losses as calculated by Plaintiffs. Further detail regarding the figures and justification of the discount is provided in the supporting memorandum. *See* Memorandum of Law in Support, Section IV.C.1

      d.      Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval. If there are no such cases, counsel should so state.

None.

      e.      The proposed allocation plan for the settlement fund.

The amount paid to each Class Member will be determined by the proposed Plan of Allocation that is based on the average account balance of each Class Member's account during the relevant period. Further details are provided in the supporting memorandum and the proposed Plan of Allocation document attached thereto. See Memorandum of Law in Support, Section IV.C.2.

      f.      If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples.

Participants, and Beneficiaries and Alternate Payees with Active Accounts in the Plan, do not need to do anything affirmative to receive payment under the Settlement, as their accounts will automatically be credited the amount due to them under the Settlement. Only Authorized Former Participants, and Beneficiaries and Alternate Payees who no longer have Active Accounts will need to submit a Former Participant Claim. Based on the settlement administrator and counsel's experience in similar cases involving ERISA breach of fiduciary duty claims, the expected claim rate is 25%

      g.      In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.

1     There is no reversion.

2     Accordingly, Plaintiffs respectfully request that the Court enter the Preliminary Approval

3 Order and, if the Court deems necessary, hold a preliminary approval hearing on September 27,

4 2024, at 9:00 a.m. or at another date convenient for the Court.

Dated:  August 23, 2024                          Respectfully submitted,

5

6                                                **CAPOZZI ADLER, P.C.**

7                                                */S/ Mark K. Gyandoh*
                                                 Mark K. Gyandoh
8                                                James A. Wells
                                                 (admitted *pro hac vice*)
9                                                312 Old Lancaster Road
                                                 Merion Station, PA 19066
10                                               Tel: (610) 890-0200
                                                 Email: markg@capozziadler.com
11                                                      jayw@capozziadler.com

12                                               **ROSMAN & GERMAIN LLP**

13                                               Daniel L. Germain (State Bar No. 143334)
                                                 Rosman & Germain APC
14                                               5959 Topanga Canyon Boulevard, Ste. 360
                                                 Woodland Hills, CA  91367-7503
15                                               Telephone: (818) 788-0877
                                                 Facsimile: (818) 788-0885
16                                               Email: germain@lalawyer.com

17

18                                               **MUHIC LAW LLC**
                                                 Peter A. Muhic
19                                               (*Admitted Pro Hac Vice*)
                                                 923 Haddonfield Road,
20                                               Suite 300 Cherry Hill, NJ  08002
                                                 Phone:  (856) 324-8252
21                                               Fax:     (717) 233-4103
                                                 Email:  peter@muhiclaw.com

22

23                                               *Counsel for Plaintiffs and the Settlement Class*

24

25

26

1

## **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................................1

II.    RELEVANT BACKGROUND .............................................................................1

III.   CONSOLIDATION OF THE *MIGUEL* AND *SIMONELLI* ACTIONS FOR SETTLEMENT PURPOSES IS APPROPRIATE ................................................2

    A.   Legal Standards.........................................................................................2

    B.   Argument ..................................................................................................3

IV.   THE PROPOSED SETTLEMENT ......................................................................4

    A.   Class Definition ........................................................................................4

    B.   Released Claims.........................................................................................5

    C.   Class Relief ...............................................................................................5

         1.   Settlement Fund ............................................................................5

         2.   Distribution of Settlement Funds to Class Members ...................5

         3.   Payment of Case Contribution Awards........................................6

         4.   Payment of Attorneys' Fees, Costs, and Expense.......................6

         5.   Any Uncashed Checks Will Be Distributed to the Settlement Fund ...........7

    D.   Approval of Settlement Terms by an Independent Fiduciary .................7

    E.   Settlement Administration .......................................................................7

    F.   Dissemination of Notice to The Class ....................................................8

    G.   Opportunity to Object ..............................................................................9

    H.   The Court Retains Jurisdiction.................................................................9

V.    ARGUMENT.......................................................................................................9

A.     The Court Will Be Able to Able to Certify the Class for Purposed of
       Settlement ................................................................................................10

       1.     The Settlement Class Satisfied Rule 23(a)....................................10

              a.     Numerosity .........................................................................10

              b.     Commonality .......................................................................11

              c.     Typicality............................................................................12

              d.     Adequacy ............................................................................13

       2.     The Settlement Class Satisfies Rule 23(b)(1)...........................14

       3.     Capozzi Adler Should Be Appointed as Class Counsel ...........................15

B.     The Settlement, Notice Plan, And Plan of Allocation Warrant
       Preliminary Approval................................................................................16

       1.     The Settlement Should Be Preliminarily Approved....................16

       2.     The Notice Plan Should Be Preliminarily Approved ..................20

       3.     The Plan of Allocation Should Be Preliminarily Approved.........21

IV.    CONCLUSION....................................................................................................22

1

2

# **TABLE OF AUTHORITIES**

3

**Page(s)**

4

CASES

5

*In re Adams Apple, Inc.*,
829 F.2d 1484 (9th Cir.1987) ............................................................................................2

6

7

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................9, 10, 14

8

9

*Bailey v. Verso Corp.*,
337 F.R.D. 500 (S.D. Ohio 2021)
3:17-cv-332, 2021 WL 5815727 (S.D. Ohio Dec. 24, 2021).............................................14

10

11

*Barcenas v. Rush Univ. Medical Ctr.*,
No. 22-cv-00366 (N.D. Ill. Jan. 19, 2023) .......................................................................21

12

*Beach v. JPMorgan Chase Bank, N.A.*,
2019 WL 2428631 (S.D.N.Y. June 11, 2019) ....................................................................14

13

14

*Beldock v. Microsoft Corp.*,
2023 WL 1798171, 22-CV-1082JLR (W.D. Wa, 2023)....................................................19

15

16

*Borenstein v. Finova Grp. Inc.*,
No. CIV. 00-1010PHXEHC, 2000 WL 34524743 (D. Ariz. Aug. 30, 2000)...............................3

17

18

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ..........................................................................................16

19

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ............................................................................................20

20

21

*Clark v. Duke Univ.*,
2018 WL 1801946 (M.D.N.C. Apr. 13, 2018) ............................................................12, 13, 15

22

23

*Cunningham v. Cornell Univ.*,
2019 WL 275827 (S.D.N.Y Jan. 22, 2019) ....................................................................11, 13

24

25

*Deaver v. Compass Bank*,
2015 WL 8526982 (N.D. Cal. 2015) ................................................................................19

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION TO CONSOLIDATE ACTIONS,
PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFY A CLASS FOR
SETTLEMENT PURPOSES, APPROVE FORM AND MANNER OF CLASS NOTICE, SCHEDULE A FAIRNESS
HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 3:20-CV-00753-MMC
-iii-

*De Leon v. Ricoh USA, Inc.*,
No. 18-CV-03725, 2019 WL 6311379 (N.D. Cal. Nov. 25, 2019) .............................................10

*Does I v. Gap, Inc.*,
No. CV-01-0031, 2002 WL 1000073 (D.N. Mar. Is. May 10, 2002) ..........................................17

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...................................................................................................................20

*Etter v. Allstate Ins. Co.*,
No. C 17-00184, 2018 WL 5761755 (N.D. Cal. May 30, 2018) ...............................................18

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ..................................................................................................11

*Fleming v. Impax Lab'ys Inc.*,
2021 WL 5447008 (N.D. Cal. 2021) .........................................................................................19

*Foster v. Adams & Assocs., Inc.*
2019 WL 4305538 (N.D. Cal. Sept. 11, 2019) ...............................................................10, 11, 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................................................................................................9

*Hanon v. Dataproducts Corp.*,
976 15 F.2d 497 (9th Cir.1992) .................................................................................................12

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909 (9th Cir. 1964) .....................................................................................................10

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)...........................................21

*Huene v. U.S.*,
743 F.2d 703 (9th Cir.1984) .......................................................................................................2

*Johnson v. Serenity Transp., Inc.*,
No. 15-CV02004, 2021 WL 3081091 (N.D. Cal. July 21, 2021)..........................................10, 18

*Kanawi v. Betchtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008)................................................................................12, 13, 14 ,15

*Karpik v. Huntington Bancshares, Inc.*,
2021 WL 757123 (S.D. Ohio Feb. 18, 2021)............................................................14, 21

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
323 F.R.D. 145 (S.D.N.Y. 2017) ...............................................................................14

*In re Lithium Ion Batteries Antitrust Litig.*,
2017 WL 1086331 (N.D. Cal. 2017) ...........................................................................19

*Massachusetts Mutual Life Insurance Co. v. Russell*,
473 U.S 134 (1985) ...................................................................................................13

*Miguel, et. al. v. Salesforce.com, Inc. et al.*
3:20-cv-01753 (N.D. CA 2020) ..........................................................................*Passim*

*Moreno v. Deutsche Bank Ams. Holding Corp*,
2017 WL 3868803 (Sept. 5, 2017)..............................................................................14

*Mullane v. Central Hanover Bank and Trust Co.*,
339 U.S. 306 (1950) ...................................................................................................20

*In re MyFord Touch Consumer Litig.*,
2019 WL 1411510 (N.D. Cal. 2019) ...........................................................................19

*In re Nexus 6P Prods. Liab. Litig.*,
No. 17-CV-02185, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ..............................22

*In re Orbital Sciences Corp. Sec. Litig.*,
188 F.R.D. 237 (E.D. Va.1999) ...................................................................................4

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................17

*Ortiz v. Fireboard Corp.*,
527 U.S. 815 (1999)....................................................................................................15

*Paxonet Commc'ns, Inc. v. TranSwitch Corp.*,
303 F. Supp. 2d 1027 (N.D. Cal. 2003) .......................................................................3

*Peters v. Nat'l R.R. Passenger Corp.*,
966 F.2d 1483 (D.C. Cir. 1992 .................................................................................20

*Philips v. Munchery Inc.*,
No. 19- CV-00469, 2020 WL 6135996 (N.D. Cal. Oct. 19, 2020) ..............................10

*Rites v. Ariz. Beverages USA, LLC*,
287 F.R.D. 523 (N.D. Cal. 2012)........................................................................................10

*Sacerdote v. New York Univ.*,
2018 WL 840364 (S.D.N.Y. Feb. 13, 2018).....................................................................13, 14

*Shirk v. Fifth Third Bancorp*,
2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) ...................................................................15

*Slezak v. City of Palo Alto*,
No. 16-CV-03224-LHK, 2017 WL 2688224 (N.D. Cal. June 22, 2017) .....................................17

*Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*,
720 F.Supp. 805 (N.D.Cal.1989) ...........................................................................................3

*Surowitz v. Hilton Hotels Corp.*,
383 U.S. 363 (1966) ..............................................................................................................14

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ..............................................................................................16

*Tadepalli v. Uber Techs., Inc.*,
No. 15-CV-04348-MEJ, 2015 WL 9196054 (N.D. Cal. Dec. 17, 2015) ...................................17

*Tatum v. R.J. Reynolds Tobacco Co.*,
254 F.R.D. 59 (M.D.N.C. 2008) ..........................................................................................12

*Terraza v. Safeway Inc.*,
No. 16-cv-03994-JST, (N.D. Cal. Sept. 8, 2020)...................................................................21

*Urakhchin v. Allianz Asset Mgt. of Am., L.P.*,
2018 WL 3000490 (C.D. Cal. Feb. 6, 2018)....................................................................16, 17

*Viceral v. Mistras Grp., Inc.*,
No. 15-CV-02198, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ..............................................16

*Vikram v. First Student Mgt., LLC*,
No. 17-CV04656-KAW, 2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ......................................9

*Villegas v. J.P. Morgan Chase & Co.*,
No. CV 09- 00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012)...........................................10

*Simonelli, et. al. v. Salesforce.com, Inc. et. al.,*
24-cv-00813 (N.D. Cal. 2024) ............................................................*Passim*

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011)...................................................................................11, 12

*Walsh v. CorePower Yoga LLC,*
No. 16-CV-05610, 2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ...............................18

*West v. Continental Automotive, Inc.,*
2017 WL 2470633 (W.D.N.C. June 7, 2017) ...............................................14

*White v. Chevron,*
752 F. App'x 453 (9th Cir. 2018) ...............................................................18

STATUTES

28 U.S.C. §§ 1715 ....................................................................................9

29 U.S.C. § 1001 ......................................................................................1

29 U.S.C. § 1104 ....................................................................................11

29 U.S.C. § 1104(a)(1)............................................................................11

29 U.S.C. § 1109 ....................................................................................11

29 U.S.C. § 1109(a) ................................................................................13

29 U.S.C. § 1132(a)(2)..........................................................................11, 13

FED. R. CIV. P. 23.............................................................................9, 10, 11, 12

FED. R. CIV. P. 23(a)............................................................................9, 10, 14

FED. R. CIV. P. 23(a)(2) ..........................................................................11

FED. R. CIV. P. 23(a)(3) ..........................................................................12

FED. R. CIV. P. 23(a)(4) ........................................................................13, 14

FED. R. CIV. P. 23(b)..........................................................................9, 14, 15

FED. R. CIV. P. 23(b)(1)........................................................................14, 15

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION TO CONSOLIDATE ACTIONS,
PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFY A CLASS FOR
SETTLEMENT PURPOSES, APPROVE FORM AND MANNER OF CLASS NOTICE, SCHEDULE A FAIRNESS
HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 3:20-CV-00753-MMC
-vii-

FED. R. CIV. P. 23(b)(1)(A) ...........................................................................15

FED. R. CIV. P. 23(b)(1)(B) ...........................................................................15

FED. R. CIV. P. 23(c)(2) ...........................................................................7, 8

FED. R. CIV. P. 23(e) ...........................................................................21

FED. R. CIV. P. 23(e)(2) ...........................................................................16

FED. R. CIV. P. 23(g)(1)(A) ...........................................................................15

FED. R. CIV. P. 23(I)(2) ...........................................................................21

FED. R. CIV. P. 42(a) ...........................................................................2, 3

**Other Sources**

Class Action Fairness Act of 2005 ("CAFA") ................................................ 9

Employee Retirement Income Security Act of 1974 ........................................*Passim*

PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION TO CONSOLIDATE ACTIONS,
PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, PRELIMINARILY CERTIFY A CLASS FOR
SETTLEMENT PURPOSES, APPROVE FORM AND MANNER OF CLASS NOTICE, SCHEDULE A FAIRNESS
HEARING, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No.: 3:20-CV-00753-MMC
-viii-

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

On the eve of trial, the Parties agreed to a proposed global settlement ("Settlement") of two putative class action lawsuits (the "Actions"), brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., for total relief of one million three hundred fifty thousand dollars ($1,350,000.00). Based on the substantial relief provided by the Settlement and the risks of continued litigation, Plaintiffs and Class Counsel believe the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

Plaintiffs and Class Counsel have vigorously pursued relief on behalf of the Plan, and Defendants' Counsel have vigorously defended against Plaintiffs' allegations. The Parties agreed to the Settlement after four years of litigation and arm's-length negotiations by experienced counsel. Resolving the Action at this juncture allows the Parties to avoid continued and costly litigation (including potential appeals) that would deplete resources which could otherwise be used for the resolution of the Action, and which could result in a recovery less than that provided by the Settlement, or no recovery at all.

As part of the Settlement, the Plaintiffs request that the Court consolidate the two actions pending against Defendants: *Miguel, et. al. v. Salesforce.com, Inc. et al*., 3:20-cv-01753 and *Simonelli, et. al. v. Salesforce.com, Inc. et. al*., 24-cv-00813. As set forth below, Plaintiffs submit that all prerequisites for preliminary approval of the Settlement and certification of the Settlement Class are satisfied. As such, Plaintiffs respectfully submit that the Motion should be granted, and notice should be provided to the Settlement Class in accordance with the proposed Notice Plan.

## II.    RELEVANT BACKGROUND

In the First Amended Complaint ("FAC") (ECF No. 38), filed in *Miguel, et. al. v. Salesforce.com, Inc. et al*. ("*Miguel* Action") on October 23, 2020, Plaintiffs allege that Defendants are fiduciaries of the Plan and breached duties owed to the Plan and its participants and beneficiaries by: (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost; and (2) maintaining certain funds in the Plan despite the availability of identical or similar investment

options with lower costs and/or better performance histories. *Id.* at ¶10. Over the ensuing four years, both parties vigorously litigated the case, including two motions to dismiss, an appeal to the 9th Circuit, class certification, a motion to amend the FAC, summary judgment, a motion to exclude Plaintiffs' expert, and joint pretrial filings. The complete procedural history of the case is detailed in the attached Declaration of Mark K. Gyandoh in support of the instant motion ("Gyandoh Decl.") at ¶¶ 3-42. The Parties also exchanged thousands of pages of documents (*id.* at ¶¶ 43-51), took five fact witness depositions (*id.* at ¶¶ 52-53), took three expert depositions (*id.* at ¶ 56) and issued expert and rebuttal reports (*id.* at ¶ 57).

On February 9, 2024, Plaintiffs filed *Simonelli, et. al. v. Salesforce.com, Inc. et. al.* ("*Simonelli* Action") in the Northern District of California alleging that Defendants breached their fiduciary duties by retaining certain underperforming funds in the Plan and permitting the Plan to pay excessive recordkeeping fees. (*See* Dkt. No. 1, Class Action Complaint ("CAC") at ¶¶ 93-165). On April 5, 2024, the Court stayed the *Simonelli* Action pending resolution of the *Miguel* Action. (*See* Dkt. No. 34).

The *Miguel* Action was listed for trial on May 6, 2024. Upon further direct negotiations between the Parties, they reached an agreement to settle both the *Miguel* and *Simonelli* Actions prior to trial.

## III. CONSOLIDATION OF THE *MIGUEL* AND *SIMONELLI* ACTIONS FOR SETTLEMENT PURPOSES IS APPROPRIATE.

### A. Legal Standards

Rule 42(a) empowers the court to consolidate "actions involving a common question of law or fact." FED.R.CIV.P. 42(a). "The district court, in exercising its broad discretion to order consolidation of actions presenting a common issue of law or fact under Rule 42(a), weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. U.S.*, 743 F.2d 703, 704 (9th Cir.1984); *see also, In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir.1987) ("[c]onsolidation is within the broad discretion of the district court."). "To determine whether to consolidate, a court weighs the interest in judicial convenience against the potential for delay, confusion, and prejudice caused by consolidation."

*Paxonet Commc'ns, Inc. v. TranSwitch Corp.*, 303 F. Supp. 2d 1027, 1028–29 (N.D. Cal. 2003); *see also, Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*, 720 F.Supp. 805, 807 (N.D.Cal.1989).

**B.    Argument**

Each of the factors identified by the 9th Circuit and this District warrant consolidation of the *Miguel* and *Simonelli* Actions for settlement purposes. First, the exact same Defendants are named in both Actions.

Second, questions of fact and law are similar in both actions. Both Actions allege that the Advisory Committee and its members breached the fiduciary duties imposed under ERISA by failing to adequately monitor the Plan. Both actions focus on the Committee's actions in monitoring the Plan's investments. While the *Miguel* Action focuses on lower-cost share classes that were available for certain funds, and the *Simonelli* Action focuses on the performance of certain funds, both Actions would involve similar factual questions about what processes the Committee had in place to monitor Plan expenses and investments. The issue of recordkeeping fees in *Simonelli* would involve a similar inquiry. Both Actions would involve an examination of the following: how often the Committee met; what the Committee Members did to prepare for the meetings, including what materials were provided to the Committee by the Plan's advisors; who attended the Committee meetings; whether advisors or other third parties made presentations at the meetings; what the Committee discussed and considered at the meetings; what decisions the Committee made and how the Committee implemented those decisions; and what actions the Committee took and how it followed through on those actions.

Questions of law would also be similar: were the Committee's processes for monitoring Plan expenses and performance legally sufficient to fulfill their fiduciary responsibilities? Was the Committee on notice of the high fees the Plan was paying and the poor performance of certain investments in the Plan? Did the Committee act soon enough to address the fees and performance issues consistent with their fiduciary responsibilities? Did Plaintiffs suffer losses? Can Plaintiffs prove that those losses directly result from Defendants' breach of their fiduciary duties?

Consolidation under FED.R.CIV.P. 42(a) does not require the issues in each action to be identical.[5] Here, both questions of fact and law are similar to the degree to warrant consolidation.

Consolidation of the Actions for settlement purposes will also save considerable time and resources for both the Court and the parties. The Parties will save time and resources by consolidating the Actions and focusing their resources on having the Settlement approved as opposed to continued litigation. The Settlement Class will benefit from consolidation because the Parties and their counsel can focus on having the Settlement approved and Settlement funds distributed in a quick and efficient manner.

In addition, there is no risk of inconvenience, delay, confusion, or expense. Quite the opposite, consolidation will simplify matters for the Class Members, avoid any delay in having the Settlement Funds distributed, and conserve resources for the Parties and the Court. Lastly, Defendants do not oppose consolidation of the two actions for settlement purposes which weighs in favor of consolidating the two Actions.

Because each of the factors courts in this District consider under Rule 42(a) weigh in favor of consolidation, Plaintiffs request that the Court grant this Motion.

## IV.   THE PROPOSED SETTLEMENT

### A.   Class Definition

The Settlement Class is defined as:

> All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

(*See* Gyandoh Decl. ¶ 67, at Exhibit 1 at Section 1.47). The "Class Period" means the period from March 11, 2014, through the date the Preliminary Approval Order is entered by the Court. (*See id.* at Section 1.13).

---

[5] *See Borenstein v. Finova Grp. Inc.*, No. CIV. 00-1010PHXEHC, 2000 WL 34524743, at *5 (D. Ariz. Aug. 30, 2000) ("[t]he differences between the claims of the common stock and the note purchasers do not eliminate the benefits of consolidation…"); *In re Orbital Sciences Corp. Sec. Litig.*, 188 F.R.D. 237, 239 (E.D. Va.1999) (consolidating cases, stating "[e]ven if the shareholders and the option holders are not identically situated in every respect, they share a mutual interest in having the Court resolve these questions…").

**B.      Released Claims**

If the Court grants Final Approval of the Agreement, the Settlement Class will be deemed to have released Defendants from all claims as described in Section 1.40 and Article 7 of the Agreement, which is incorporated herein by reference. (*See* Gyandoh Decl. ¶ 65, at Exhibit 1, Section 1.40, Art. 7).

**C.      Class Relief**

**1.      Settlement Fund**

Defendants have agreed to pay a Settlement Amount of $1,350,000 to resolve Plaintiffs' claims. (*See* Gyandoh Decl. ¶ 65, at Exhibit 1, at Section 1.28). Plaintiffs estimated their maximum supportable damages for both Actions was approximately $10,000,000. (*See* Gyandoh Decl. ¶ 65). The Settlement Amount represents 13.5% of Plaintiffs' maximum damages on these claims which exceeds the accepted range of recovery in class action settlements across the country and in this district. *Id.*

The Settlement Fund will be used to pay the following amounts associated with the Settlement: (1) compensation to current and authorized former participants of the Plan (*See* Gyandoh Decl. ¶ 62 at Exhibit 1, at Section 5.2.4); (2) all claims for attorneys' fees and expenses approved by the Court (*id.* at Section 5.2.1, Article 6); (3) costs arising from evaluation of the settlement by the Independent Fiduciary (not to exceed $25,000) (*id.* at Section 5.1.3); (4) all costs necessary to administer the Settlement, including, among other things, payment for the services of the Settlement Administrator and any related taxes and tax-related costs (*id.* at Section 5.1.1); and (5) payment of Case Contribution Awards to Plaintiffs not to exceed $10,000 each for Gregor Miguel and Amanda Bredlow, and $7,500 each for Class Representatives Chris Simonelli David Villareal, Joseph Douillard, Marc Runyard, Mark Tracey and Robert Ramirez, subject to Court approval (*id.* at Section 1.10).

**2.      Distribution of Settlement Funds to Class Members**

The amount paid to each Class Member will be determined by the proposed Plan of Allocation that is based on the average size of each Class Member's account during the relevant period. (*See* Gyandoh Decl. ¶ 68, at Exhibit 1.B, Plan of Allocation ("Plan")). Participants, and Beneficiaries and Alternate Payees with Active Accounts in the Salesforce.com 401(k) Plan, do not

need to do anything affirmatively to receive payment under the Settlement, as their accounts will automatically be credited the amount due to them under the Settlement. As for Authorized Former Participants, and Beneficiaries and Alternate Payees who no longer have Active Accounts, these individuals need only submit a Former Participant Claim Form to be eligible for payment under the Settlement, which, at their election, will be made either by check or rollover to an individual retirement account or other eligible employer plan. (*Id*. at Section 1.7).

### 3. Payment of Case Contribution Awards

At Final Approval, Plaintiffs will ask the Court to approve Case Contribution Awards to be paid out of the Settlement Fund to compensate Plaintiffs for their time and efforts serving as class representatives, subject to the approval of the Court. Plaintiffs have actively participated in the litigation and assisted Class Counsel in drafting the respective complaints and other documents, consulted with Class Counsel as needed, monitored the progression of the case, answered discovery-related requests for information, prepared for trial, and participated in settlement and strategy discussions. (*See* Gyandoh Decl. ¶ 70). Plaintiffs will seek contribution awards of $10,000 for Plaintiffs Miguel and Bredlow because they both prepared for and sat for full depositions, in addition to the efforts listed above, and $7,500 for the remaining Plaintiffs. (*Id.*) Consistent with awards regularly granted under similar circumstances, Plaintiffs believe that they should be compensated for their work done in support of the litigation and for assisting Class Counsel in achieving a strong settlement on behalf of the Class, as well as the reputational and other risks they undertook in bringing this Action. (*See* Gyandoh Decl. ¶ 70, at Exhibit 1, Section 5; ¶66).

### 4. Payment of Attorneys' Fees, Costs, and Expenses

At Final Approval, Class Counsel anticipates seeking an award of attorneys' fees of up to thirty-three and one-third percent of the common fund established by the Settlement ($449,955), plus all reasonable and necessary expenses advanced by Class Counsel and carried for the duration of the litigation (which will not exceed $150,000), subject to the Approval of the Court. (*See* Gyandoh Decl. ¶ 69). Class Counsel prosecuted the Class Action on a contingent basis and advanced all associated costs with no expectation of recovery in the event the litigation did not result in a recovery for the Settlement Class. (*See* Gyandoh Decl. ¶69). Because of the lengthy history of this case, including a successful appeal to the 9th Circuit, and that the case was litigated

up to the eve of trial, Class Counsel's actual fees far exceed the fees sought through the Settlement meaning any award of attorney fees would result in a fractional multiplier. (*Id.*).

### 5. Any Uncashed Checks Will Be Distributed to the Settlement Fund

All checks issued pursuant to this Plan of Allocation shall expire one hundred eighty (180) calendar days after their issue date. All checks that are undelivered or are not cashed before their expiration date shall revert to the Settlement Fund to be utilized as set forth in the Plan of Allocation. (*See* Gyandoh Decl. ¶ 68, at Exhibit B, Section 1.13). There shall be no reversion to Defendants.

### D. Approval Of Settlement Terms by an Independent Fiduciary

As an additional means of confirming the fairness, reasonableness, and adequacy of the Settlement, and to facilitate the Plan's release of claims under the Department of Labor's regulations pertaining to prohibited transactions, pursuant to the Settlement Agreement, Defendants shall retain an Independent Fiduciary to approve and authorize the Settlement on behalf of the Plan and Class Members. (*See* Gyandoh Decl. ¶ 72, at Exhibit 1, Section 2.1). Defendants, Defendants' Counsel, Plaintiffs, and Class Counsel shall provide the Independent Fiduciary with sufficient information so that the Independent Fiduciary can review and evaluate the Settlement and each of the related applications. (*Id.* at Section 2.1.4). The Independent Fiduciary's review will include interviews with Class Counsel and Defendants' Counsel, respectively. Furthermore, the Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination, for the purpose of Defendants' reliance on PTE 2003-39. (*Id.* at Section 2.1.5).

### E. Settlement Administration

The Settlement Administrator shall be Analytics, LLC ("Analytics"), a settlement administrator with over 50 years of experience administering class action settlements. (*See* Gyandoh Decl. ¶ 71). Class Counsel has worked with Analytics on a number of other ERISA class action cases. Upon preliminary approval, Analytics will mail, by first class mail, the Court-approved Class Notice to Settlement Class members using addresses from employment records and documents

associated with the Plan. *Id.* Analytics will administer a skip trace and receive updated address information for any notices that are returned for lack of a forwarding address and re-mail the notices to the updated addresses. *Id.* This type of notice is presumptively reasonable. *See New England Biolabs, Inc.*, 2022 WL 20583575, at *4 ("Notice provided by first class mail is sufficient when the names and addresses of the class members are known."). Additionally, Analytics will establish a settlement website providing Settlement Class members with important case documents, pertinent information, and contact information for the Settlement Administrator, Class counsel, and Defense counsel. *Id.*

**F.    Dissemination of Notice to The Class**

Within 45 days of the entry of the Preliminary Approval Order, or as may otherwise be determined by the Court, the Settlement Administrator shall provide Notice of the Settlement to Class Members by electronic mail (if available) or first-class mail. (*See* Gyandoh Decl. ¶ 71, at Exhibit 1, Section 2.4). The Notice shall include Class Counsel's contact information and the Settlement Website information, which will list key deadlines and links to the Notice, Former Participant Claim Form, the Preliminary Approval Order, motions for preliminary approval, final approval, and applications for attorneys' fees, expenses, and case contribution awards, the SAC, and other important documents in the case. (*See* Gyandoh Decl. ¶ 71, at Exhibit 1.A). In addition, the Notice will include the date and time of the final approval hearing, and a note advising Class Members that the hearing date may change without further notice to the Class and instructions to check the settlement website or the Court's PACER site to confirm that the date has not changed. *Id.*

Defendants shall use all reasonable efforts to provide necessary information to the Settlement Administrator so that it may effectuate Notice, implement the Plan of Allocation, and distribute the Settlement Funds. (*See* Gyandoh Decl. ¶ 62 Exhibit 1, at Sections 2.3, 8.2). The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Notice is returned and re-mail such Notice one additional time if an updated location is identified. (*See* Gyandoh Decl. ¶ 62 Exhibit 1, at Sections 2.4). As many Class Members are expected to have Active Accounts, a significant number of Settlement Class members will be easily reached through their contact information associated with those accounts, while Class Members

without Active Accounts should be reachable through the forwarding information provided to the Plan's recordkeeper when their accounts were closed.

No later than 10 calendar days after the filing of the motion for preliminary approval of the Settlement, Defendants will serve the Class Action Fairness Act Notice on the Attorney General of the United States, and the attorneys general of all states in which Class Members reside, as specified by 28 U.S.C. § 1715. (*See* Gyandoh Decl. ¶ 62 Exhibit 1, at Sections 2.5).

### G.    Opportunity to Object

Class Members shall be permitted to object to any aspect of the Settlement. (*See* Gyandoh Decl., ¶ 62 Exhibit 1, at Sections 2.2.9). The Class Notice shall provide instructions and requirements for Class Members to object to the Settlement. (*See* Gyandoh Decl. ¶ 62 Exhibit 1.A, at Sections 15-19). To be filed validly, the objection and any notice of intent to participate or supporting documents must be filed or postmarked at least thirty (30) calendar days prior to the scheduled Fairness Hearing. *Id.* Any Person wishing to speak at the Fairness Hearing shall file and serve a notice of intent to participate fifteen days (15) before the Fairness Hearing. *Id.*

### H.    The Court Retains Jurisdiction

The Court shall retain jurisdiction as to all matters relating to administration, enforcement, and interpretation of the Settlement Agreement. (*See* Gyandoh Decl. ¶62 Exhibit 1 at Section 14.11).

## V.    ARGUMENT

Under Federal Rule of Civil Procedure 23, when the Court is presented with a proposed settlement, it must determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Class certification under Rule 23 has two primary components: a proposed class must meet the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b). *See id.*; Fed. R. Civ. P. 23; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1022 (9th Cir. 1998). Approval of a settlement under Rule 23 involves "a two-step process": "First, the Court decides whether the class action settlement deserves preliminary approval. Second, after notice is given to class members, the Court determines whether final approval is warranted." *Vikram v. First Student Mgt., LLC*, No. 17-CV04656-KAW, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019).

In addition, the Court must preliminarily determine whether the settlement is fair, reasonable, and adequate. "At the preliminary approval stage, 'the settlement need only be potentially fair.'" *Johnson v. Serenity Transp., Inc.*, No. 15-CV02004, 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021) (citation omitted). "The Court cannot, however, fully assess such factors until the final approval hearing." *De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725, 2019 WL 6311379, at *10 (N.D. Cal. Nov. 25, 2019).

### A.    The Court Will Be Able to Certify the Class for Purposes of Settlement

While ERISA representative actions are ideally suited for class action treatment, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems " *Amchem*, 521 U.S. at 620. In any event, the class action device is the prevailing procedural vehicle by which retirement plan participants bring representative actions under ERISA §502(a)(2), and courts routinely grant class certification of ERISA breach of fiduciary duty actions. Additionally, the Court "must consider whether the Settlement Agreement 'provides preferential treatment to any class member.'" *Philips v. Munchery Inc.*, No. 19- CV-00469, 2020 WL 6135996, at *7 (N.D. Cal. Oct. 19, 2020) (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09- 00261, 2012 WL 5878390, at *7 (N.D. Cal. Nov. 21, 2012)).

### 1.    The Settlement Class Satisfies Rule 23(a)

#### a.    Numerosity

The numerosity requirement of Rule 23 requires that a putative class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). However, "[i]mpracticability is not impossibility, and instead refers only to the 'difficult or inconvenience of joining all members of the class.'" *Foster v. Adams & Assocs., Inc.* 2019 WL 4305538, at *3 (N.D. Cal. Sept. 11, 2019) (finding that this factor was "easily satisfied" with 2,766 vested plan participants) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)). While no specific number is needed to maintain a class action, courts in this Circuit have routinely found that a class greater than 40 often satisfies the requirement, let alone with thousands of putative class members. *See id*. (citing *Rites v. Ariz. Beverages USA, LLC*, 287 F.R.D. 523, 526 (N.D. Cal. 2012)). Here, as of December 31, 2021, the Plan had over 50,000 participants with account balances. (*See* Dkt. No.

155, Corrected Joint Pretrial Statement at ¶ 6). Thus, the proposed Class easily meets Rule 23(a)'s numerosity requirements.

### b.      Commonality

The commonality prerequisite of Rule 23 requires "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). Commonality involves "the capacity of a class[-]wide proceeding to generate common answers apt to drive resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). This occurs when there is at least one common question, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Courts in this Circuit find "[t]he existence of shared legal issues with divergent factual predicates is sufficient [to meet the commonality requirement], as is a common core of salient facts coupled with disparate legal remedies within the class." *Foster*, 2019 WL 4305538, at *3 (citations omitted). Ultimately, commonality only asks the court to look "for some shared legal issue or common core of facts" and "requires the plaintiff to demonstrate the class members have suffered the same injury." *Id*. (citing *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012)).

Plaintiffs claim Defendants breached fiduciary duties owed to the Plan under ERISA § 404, 29 U.S.C. § 1104, and brought the Action in a representative capacity under ERISA §§ 409 and 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2). Thus, Plaintiffs' Plan-wide claims involve legal and factual questions that inherently affect all participants and beneficiaries in the Plan. Indeed, Plaintiffs' "br[ought] suit on behalf of participants in the Plan [], the centralized administration of which is common to all class members." *Cunningham v. Cornell Univ.*, 2019 WL 275827, at *5 (S.D.N.Y Jan. 22, 2019). "Because the fiduciary duties are owed to the [Plan] . . . common questions of law and fact are central to the case." *Id*.; *see also* 29 U.S.C. § 1104(a)(1) ("a fiduciary shall discharge his duties with respect to a plan") (emphasis added).

Here, the overarching questions of law and fact applicable to all Plan participants are whether Defendants breached fiduciary duties owed to the Plan and its participants by: selecting and retaining investment options in the Plan despite the high cost of the funds in relation to other comparable investments in order to pay excessive recordkeeping fees through revenue sharing; and failing to investigate the availability of lower-cost share classes of certain mutual funds in the Plan,

and retaining underperforming funds in the Plan. Moreover, all Plan participants were subject to the Committee's decisions about selection and retention of Plan investments. *See Kanawi v. Betchtel Corp.*, 254 F.R.D. 102, 109 (N.D. Cal. 2008) (finding commonality where injury stemmed from whether defendants breached their fiduciary duties to the Plan by making imprudent investment decisions); *see also Clark v. Duke Univ.*, 2018 WL 1801946, at *5 (M.D.N.C. Apr. 13, 2018). While a single common question is sufficient to meet this standard, the common questions here are numerous. *See Wal-Mart*, 564 U.S., at 359. Here, as in *Kanawi and Clark*, Plaintiffs' claims and each putative Class member's claims are based on the same events and legal theory, *i.e.*, breaches of fiduciary duty stemming from the Defendants' alleged imprudent process for selecting, administering, and monitoring the Plan's investments, along with the Plaintiffs' remedial theory, which is identical for the named Plaintiffs and the proposed Class members. *Kanawi,* 254 F.R.D. at 109; *Clark*, 2018 WL 1801946, at *5. Since the central allegations here concern Defendants' administration of the Plan, they are common to all Plan participants who are empowered to bring an action on behalf of the Plan. *Kanawi*, 254 F.R.D. at 109.

### c.      Typicality

The typicality prerequisite of Rule 23 requires that the claims of the representative plaintiffs be typical of the claims of the class. See FED. R. CIV. P. 23(a)(3). Typicality is met when "other members have the same or similar injury, . . . the action is based on conduct which is not unique to the named plaintiffs, and . . . other class members have been injured by the same course of conduct." *See Kanawi*, 254 F.R.D. at 110 (citing *Hanon v. Dataproducts Corp*., 976  15    F.2d  497, 508 (9th Cir.1992) (internal quotation marks omitted). Like commonality, typicality is a "permissive" standard and "the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Id*. Since claims under ERISA § 502(a)(2) are inherently representative claims, any participant's claim is necessarily typical of the claims of the Class; this is because every participant is asserting the Plan's claim. Indeed, Plaintiffs brought this Action on behalf of the Plan, such that "[a]ny recovery of lost benefits will go to the Plan and will be held, allocated, and ultimately distributed in accordance with the requirements of the Plan and ERISA." *Tatum v. R.J. Reynolds Tobacco Co*., 254 F.R.D. 59, 66 (M.D.N.C. 2008).

Courts routinely find a retirement plan participant's breach of fiduciary duty claim to be typical of the claims of all participants in such a plan. *See Cunningham*, 2019 WL 275827, at *7 (typicality requirement met where plaintiffs "sufficiently alleged that the defendants' failure to manage the Plans affected all proposed members of the class); *Sacerdote v. New York Univ.*, 2018 WL 840364 at *3 (S.D.N.Y. Feb. 13, 2018) (noting that analysis of the typicality factor is similar to the commonality analysis and finding because "[e]ach named plaintiff is asserting a claim on behalf of the Plans . . . [t]he adjudication of the breach of fiduciary duty claims will not turn on any individual class member's circumstance."); *Kanawi*, 254, F.R.D. at 110 (typicality met for fiduciary breach claims because "[n]one of the facts or legal claims are unique to the named Plaintiffs[]" since "[t]he complaint is based on allegations and recovery that address the Plan as a whole, not individual claimants"). The circumstances in this Action, in which Plaintiffs alleged fiduciary breaches arising out of Defendants' purported management and administration of the Plan, are no exception. Defendants' Plan-wide alleged conduct at issue in this Action, of employing a "disloyal and imprudent process for selecting, administering and monitoring the Plan's . . . investments," is of a kind routinely found to support determinations of typicality. *Clark*, 2018 WL 1801946 at *5. Likewise, the remedial theory asserted by Plaintiffs here is identical among all members of the proposed Class. See id. In sum, Plaintiffs' claims on behalf of the Plan are typical of all Class members' claims.

### d.   Adequacy

Representative plaintiffs must also show that they will "fairly and adequately protect the interests of this class." FED. R. CIV. P. 23(a)(4). This inquiry analyzes "whether any conflicts of interest exist between the named plaintiffs and the class members" and "whether the named Plaintiffs' counsel will adequately protect the interests of the class." *Kanawi*, 254 F.R.D. at 109.

Plaintiffs' interests are tightly aligned with all other members of the proposed Class by virtue of the very nature of the claims that they bring. Plaintiffs, acting in a representative capacity, seek to enforce the duties that Defendants owed to the Plan and to recover the damages and equitable relief due to them. *See* 29 U.S.C. §§ 1109(a), 1132(a)(2); *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S 134, at 142 n.9 (1985) "There is no reason to doubt that the name[d] plaintiffs will 'fairly and adequately protect the interests of the class,' as they have

identical financial interests in this action as to the proposed class members." *Sacerdote*, 2018 WL 840364, at *4 (internal citation omitted) (quoting FED. R. CIV. P. 23(a)(4)). "The general rule that there is 'a relatively low likelihood of intra-class conflicts in cases of excessive fee claims' because the recovery is to the Plan, not to individual Plaintiffs, holds true here." *Beach v. JPMorgan Chase Bank, N.A.,* 2019 WL 2428631, at *8 (S.D.N.Y. June 11, 2019) (quoting *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 164 (S.D.N.Y. 2017)); *see also Kanawi*, 254 F.R.D. at 111. Since Plaintiffs are pursuing claims on behalf of the Plan, there are no conflicts between Plaintiffs' individual interests and the interests of the proposed Class. Indeed, Plaintiffs and Class members all share the same objectives, the same factual and legal positions, and the same interest in establishing Defendants' liability. *See Kanawi*, 254 F.R.D. at 110 *see also Moreno v. Deutsche Bank Ams. Holding Corp*, 2017 WL 3868803, at *7 (Sept. 5, 2017); *West v. Continental Automotive, Inc.,* 2017 WL 2470633, at *2 (W.D.N.C. June 7, 2017) ("[T]here is no evidence of a direct conflict of interests between named Plaintiffs and the class they seek to represent.").

A class representative needs only a basic understanding of the claims and a willingness to participate in the case, requirements that Plaintiffs here easily surpass. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). Plaintiffs have demonstrated their commitment to pursuing this Action on behalf of a Settlement Class and have achieved a very favorable result, which does not favor any member of the Settlement Class at the expense of others. (*See* Gyandoh Decl., at ¶ 86-93). Plaintiffs clearly have, and will continue to, adequately represent all members of the Settlement Class. In addition, Plaintiffs have retained qualified and competent counsel, whose adequacy is discussed in greater detail below. *See Bailey v. Verso Corp.*, 337 F.R.D. 500, 507 (S.D. Ohio 2021), judgment entered, No. 3:17-cv-332, 2021 WL 5815727 (S.D. Ohio Dec. 24, 2021) (finding that the adequacy requirement satisfied by class counsel who were "experienced ERISA litigators" and had "administered the settlement of numerous retiree-benefit class actions").

### 2.  The Settlement Class Satisfies Rule 23(b)(1)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b). *See Amchem*, 521 U.S. at 613-14. Courts routinely grant certification under Rule 23(b)(1) in ERISA fiduciary breach cases. *See Karpik v. Huntington Bancshares, Inc.,* 2021 WL 757123, at *11 (S.D. Ohio Feb. 18, 2021) (noting that cases involving allegations of

fiduciary breaches to a trust or plan[] are precisely the type of cases that are encompassed by" Rule 23(b)(1); *Ortiz v. Fireboard Corp.*, 527 U.S. 815, 833-34 (1999) (calling breach of trust actions a "classic example" of a Rule 23(b)(1) class); *Shirk v. Fifth Third Bancorp*, 2008 WL 4425535, at *4 (S.D. Ohio Sept. 30, 2008) ("courts have routinely found that class certification is appropriate under Rule 23(b), and most usually 23(b)(1)" in ERISA breach of fiduciary duty cases). Actions under ERISA §§ 409 and 502(a)(2) for breach of fiduciary duty present a "paradigmatic example" of a Rule 23(b)(1) class. *Kanawi*, 254 F.R.D. at 111-12 (citations omitted); *see also Foster,* 2019 WL 4305538, at *7 ("Certification under Rule 23(b)(1) is particularly appropriate in cases involving ERISA fiduciaries who must apply uniform standards to a large number of beneficiaries.") (citations omitted). Certification here is appropriate under either subpart of Rule 23(b)(1). *See Clark*, 201 WL 1801946, at *9-*10 (finding that plaintiffs established basis for certification under Rule 23(b)(1)(A) and Rule 23(b)(1)(B)).

### 3. Capozzi Adler Should Be Appointed as Class Counsel

In appointing Class Counsel, this Court should consider the Rule 23(g)(1)(A) factors:

(i)  the work counsel has done in identifying or investigating potential claims in this action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in this action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources counsel will commit to representing the class.

*See* Fed. R. Civ. P. 23(g)(1)(A).

Proposed Class Counsel, Capozzi Adler, P.C. ("Class Counsel"), are exceedingly qualified under these factors. (*See* Gyandoh Decl., ¶¶ 73-84). To date, Class Counsel has leveraged their experience and resources to vigorously pursue recovery on behalf of the Plan and protect the interests of all Class Members, including by comprehensively investigating the claims forming the basis of the Action, filing detailed pleadings, briefing several motions, engaging in the discovery process, and litigating the case to the eve of trial. (*Id*. at ¶ 84). Class Counsel also have extensive experience litigating ERISA fiduciary breach cases and overseeing the administration of settlements in ERISA actions. (*Id.* at ¶¶ 79-81). Class Counsel will continue to leverage their wealth of relevant

experience and resources on behalf of the Settlement Class through final resolution, including addressing inquiries from members of the Settlement Class and supervising the work of the Settlement Administrator. Accordingly, the Court should appoint Capozzi Adler, P.C. as Class Counsel.

**B.    The Settlement, Notice Plan, And Plan of Allocation Warrant Preliminary Approval**

**1.    The Settlement Should Be Preliminarily Approved**

"To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate." *Urakchin v. Allianz Asset Mgt. of Am., L.P*., SACV151614, 2018 WL 3000490, at *5 (C.D. Cal. Feb. 6, 2018) (citing Fed. R. Civ. P. 23(e)(2)). In determining whether a settlement meets these requirements, courts look to factors including the strength of the claims and defenses, the risk, expense, and complexity of continued litigation, the stage of proceedings and extent of discovery completed, and the experience and views of class counsel. *Id*. The relative importance of these factors depends upon the unique facts and circumstances of a given case, and "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . ." *Id*. (citations and alterations omitted). "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008); *Campbell v. Facebook, Inc.,* 951 F.3d 1106, 1121 (9th Cir. 2020) (same).

As a preliminary matter, although Plaintiffs believe there is strong legal and factual support for their claims, there is inherent risk in taking complex ERISA claims to trial. Trial presentations would have relied heavily on competing expert testimony and given that Plaintiffs bear the burden of proving both liability and damages, success was by no means guaranteed. Regardless of the outcome of a trial, the non-prevailing party would have likely appealed, requiring both sides to expend considerably more resources and delay resolution of the case even further. Accordingly, the Settlement is a product of an extensive arm's-length process in recognition of these risks. *See Urakchin*, 2018 WL 3000490, at *4. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Viceral v. Mistras Grp.,*

*Inc.,* No. 15-CV-02198, 2016 WL 5907869, at \*8 (N.D. Cal. Oct. 11, 2016); *see also Slezak v. City of Palo Alto,* No. 16-CV-03224-LHK, 2017 WL 2688224, at \*5 (N.D. Cal. June 22, 2017) (finding the "likelihood of fraud or collusion [wa]s low . . . because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator."). Further, Class Counsel and Defendants' counsel are experienced in ERISA litigation, and each possess a thorough understanding of the factual and legal issues involved in the Action. *See Tadepalli v. Uber Techs., Inc.,* No. 15-CV-04348-MEJ, 2015 WL 9196054, at \*9 (N.D. Cal. Dec. 17, 2015) ("Settlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel.").

Class Counsel conducted substantial investigation and analysis of thousands of pages of documents. (*See* Gyandoh Decl. ¶ 53). "Discovery can be both formal and informal" and, here, Plaintiffs and Class Counsel engaged in significant investigation of the Parties' claims and defenses even before filing the initial complaint, and since then have undertaken extensive formal fact and expert discovery. *See Urakhchin*, 2018 WL 3000490, at \*4. In addition, Plaintiffs and Class Counsel litigated and eventually prevailed against Defendants' second motion to dismiss after a successful appeal to the 9th Circuit. (*See* Dkt. No. 58). They also won a contested motion for class certification, and defeated Defendants' motions for summary judgment and to exclude Plaintiffs' expert. (*See* Dkt. Nos. 96, 140, 141). Indeed, the Parties were on the eve of trial when they agreed to the Settlement. As already discussed, Plaintiffs faced meaningful challenges in their ability to obtain a recovery on behalf of the Plan, even setting aside the additional complexity and delay of likely appeals, which strongly supports the preliminary approval of the Settlement. *See Urakhchin*, 2018 WL 3000490, at \*4.

Class Counsel has significant experience in class action litigation generally and ERISA breach of fiduciary duty litigation in particular and are of the opinion that the Settlement is fair and reasonable. "'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" *Urakhchin*, 2018 WL 3000490, at \*5 (quoting *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) and granting preliminary approval). This presumption is especially warranted based on the opinion of "experienced plaintiffs' advocates and class action lawyers." *Does I v. Gap, Inc.*, No. CV-01-0031, 2002 WL 1000073, at \*13 (D.N. Mar. Is. May 10,

2002); *Walsh v. CorePower Yoga LLC*, No. 16-CV-05610, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) (holding that settlements that are "the result of arms'-length negotiations among experienced counsel" weigh in favor of preliminary approval.). The Settlement provides a substantial monetary recovery of $1,350,000. Further, the Parties will submit the Settlement and related applications for fees and expenses to an independent fiduciary retained on behalf of the Plan, which will provide an opinion on the Settlement's fairness before the final fairness hearing.

"Preliminary approval is thus appropriate where 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Johnson v. Serenity Transp., Inc.,* No. 15-CV02004, 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021) (citation omitted); *Etter v. Allstate Ins. Co.,* No. C 17-00184, 2018 WL 5761755, at *1 (N.D. Cal. May 30, 2018) (stating same).

Plaintiffs' expert estimated supportable maximum damages related to the *Miguel* action claims (which were on the eve of trial) to be $5,234,737. (*See* Gyandoh Decl. ¶ 65). While this figure is defensible, the likelihood of proving these maximum damages would be challenging for Plaintiffs, particularly because Defendants would assuredly challenge the loss calculation methodology and interest rates applied (not to mention challenges to causation and other elements of Plaintiffs' claims).[6] The Settlement also encompasses Plaintiffs' claims in the *Simonelli* action which Plaintiffs assign a similar value in the $5 million range as determined by Plaintiffs' consulting experts. (*See* Gyandoh Decl. ¶ 65). The *Simonelli* Complaint alleges that the Defendants imprudently retained underperforming funds in the Plan. But underperformance claims can be extremely difficult to prove given the latitude courts generally give plan fiduciaries regarding investment decisions. Indeed, the 9th Circuit has viewed these claims with a high degree of scrutiny. *See White v. Chevron*, 752 F. App'x 453, 455 (9th Cir. 2018) (affirming district court's holding that defendants did not breach their fiduciary duties in underperformance claim). In their opposition to Plaintiffs' Motion for Leave to File an Amended Class Action Complaint (*See* Dkt. No. 101), Defendants previewed the arguments they would assert against Plaintiffs' claims in

---

[6] The recordkeeping claim in the *Simonelli* Complaint largely overlapped with the lower share class claim in the *Miguel* action because Plaintiffs argue the revenue share generated from higher class shares went toward paying for recordkeeping services.

Simonelli. (*See* Dkt. No. 104). Defendants would argue that a) the challenged funds had high overall Morningstar ratings, b) the challenged funds rebounded in later years of the class period showing that their retention was not imprudent, c) Plaintiffs' comparator funds are inappropriate because they followed different investment strategies than the challenged funds, d) Plaintiffs cherry-picked the best-performing comparators out of large pools of potential comparators, and e) there are potential conflicts between the claims in *Miguel* and *Simonelli*. While Plaintiffs are confident in their counter arguments, given the legal landscape of underperformance claims, had the Court accepted any one or combination of Defendants' arguments either at the motion to dismiss or summary judgment stages, there was significant risk that the claims would not succeed on the merits. *See Beldock v. Microsoft Corp*., 2023 WL 1798171, 22-CV-1082JLR (W.D. Wa, 2023) (granting defendants' motion to dismiss in similar underperformance claims). Likewise, had the claims survived, proving damages in underperformance claims is challenging, particularly when the challenged funds' performance later rebounds and erases damages from prior years of underperformance, as arguably was the case for several of the funds here. Given the reality of these challenges, Plaintiffs made the decision to settle the two cases together.

The $1,350,000 Settlement represents roughly 13.5% of Plaintiffs' maximum damages on the claims from both actions which exceeds the accepted range of recovery in class action settlements across the country and in this district. (*See* Gyandoh Decl. ¶ 65); se*e also Fleming v. Impax Lab'ys Inc*., 2021 WL 5447008, at *10 (N.D. Cal. 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions"); *In re MyFord Touch Consumer Litig.,* 2019 WL 1411510, at *10 (N.D. Cal. 2019) (approving settlement providing for 5.7% of total possible recovery); *In re Lithium Ion Batteries Antitrust Litig.,* 2017 WL 1086331, at *4 (N.D. Cal. 2017) (overruling objections to settlement amount representing between 2.2% and 11.2% of total possible damages); *Deaver v. Compass Bank,* 2015 WL 8526982, at *7 (N.D. Cal. 2015) (10.7% of total damages).

In sum, the Settlement is the product of vigorous litigation and arm's-length negotiation by experienced and well-informed counsel, adequately reflects the strength of the parties' claims and defenses, is based on sufficient discovery and information, and provides significant relief to the

1  Settlement Class. Accordingly, the Court should find the Settlement is fair, reasonable, and

2  adequate, and merits preliminary approval.

3          **2.      The Notice Plan Should Be Preliminarily Approved**

4          In addition to preliminarily approving the proposed Settlement, the Court must approve the

5  proposed means of notifying Settlement Class members. *See* FED. R. CIV. P. 23(I)(2). Due process

6  and Rule 23(e) do not require that each Class Member receive notice, but rather that class notice

7  must be "reasonably calculated, under the circumstances, to apprise interested parties of the

8  pendency of the action and afforded them an opportunity to present their objections." *Mullane v.*

9  *Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be

10  provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle*

11  *& Jacquelin*, 417 U.S. 156, 175 (1974). "Notice is satisfactory if it 'generally describes the terms of

the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

forward and be heard.'" *Churchill Village, L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004).

12          The Notice Plan is designed to reach the largest number of Settlement Class members

13  possible. The Settlement Notice will be sent by email and/or first-class mail to the last known

14  address of each Settlement Class member prior to the Fairness Hearing. (*See* Gyandoh Decl. ¶ 62 at

15  Exhibit 1, Section 2.4); *see also Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C.

16  Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies Rule 23(c)(2)'s

17  requirement that class members receive 'the best notice practicable under the circumstances.'").

Notably, all Settlement Class members had Plan accounts, so the Plan's recordkeeper has

18  forwarding addresses and other identifying information for a substantial portion of the Settlement

19  Class.

20          The "Notice of Proposed Class Action Settlement" provides Settlement Class Members the

21  information they need to understand the terms of the settlement and the settlement process. (*See*

22  Gyandoh Decl. ¶ 62 at Exhibit 1.A, Notice of Proposed Class Action Settlement ("Notice")). The

23  Notice describes the case and the Settlement terms (*id.* at Sections 1-4); provides a Settlement

Website for Settlement Class Members to get more information and directs them to the Court's

24  PACER system (*id.* at Section 5); identifies the dollar amount of the Settlement, the amount Class

25  Counsel is requesting in fees and expenses and amounts of requested case contribution awards (*id.*

26

at Sections 6, 10); how awards will be determined and how to submit a claim (*id*. at Sections 7-8); claims released by Settlement Class Members (*id*. at Section 11); Class Counsel's identity and contact information (*id*. at Sections 12, 16); objection rights and procedures (*id*. at Sections 14-16); the date and location of the Final Fairness Hearing and rights to attend and be heard (*id*. at Sections 17-20). In addition, the Notice, Settlement Agreement, preliminary and final approval motions and related applications, and other litigation documents will be posted on the Settlement Website. (*See* Gyandoh Decl. ¶ 62 at Exhibit 1, Section 13.2).

The Notice Plan should be approved because it satisfies all due process considerations and meets the requirements of Rule 23(e). The Notice Plan clearly describes: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released Claims; (iii) the maximum attorneys' fees, litigation expenses, and case contribution awards that may be sought; (iv) the procedure and timing for objections; and (v) subject to the Court's schedule, the date and location of the Fairness Hearing.

### 3. The Plan of Allocation Should Be Preliminarily Approved

The Plan of Allocation provides recovery to members of the Settlement Class on a pro rata basis, with no preferential treatment for the Class Representatives or any segment of the Settlement Class. (*See* Gyandoh Decl. ¶ 62 at Exhibit 1.B, Plan of Allocation ("Plan") at Section 1.5). A pro rata distribution based on each class member's loss relative to that of the class as whole "has frequently been determined to be fair, adequate, and reasonable." *Hefler v. Wells Fargo & Co.,* No. 16-CV-05479, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018) (collecting cases). This is substantially similar to plans approved by this Court in analogous ERISA litigation in this District and around the country. *See, e.g., Terraza v. Safeway Inc.,* No. 16-cv-03994-JST, Dkt. 268 (N.D. Cal. Sept. 8, 2020) ("[s]ettlement Scores will be determined by calculating the Class Member's year-end asset amounts in the Plan during the Class Period . . . ."); *see also Barcenas v. Rush Univ. Medical Ctr.,* No. 22-cv-00366, Dkt. 73 (N.D. Ill. Jan. 19, 2023) (approving substantially similar pro rata plan of allocation in analogous ERISA breach of fiduciary duty action); *Karpik*, 2021 WL 757123, at *2 (approving a plan of allocation distributing the settlement fund on a pro rata basis). The Plan also provides procedures for the Settlement Administrator to identify and compensate

former participants and beneficiaries or alternate payees without active accounts. (*See* Gyandoh Decl. ¶ 62 at Exhibit 1.B, at Section 1.7).

Courts within this District hold that "[a] plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *In re Nexus 6P Prods. Liab. Litig.*, No. 17-CV-02185, 2019 WL 6622842, at *9 (N.D. Cal. Nov. 12, 2019) (citation omitted). In light of the equitable treatment of Class Members and the competence of Class Counsel, the Court should find that the Plan of Allocation is also fair, reasonable, and adequate.

## V.   **CONCLUSION**

Plaintiffs respectfully submit that the Court should preliminarily approve the Settlement, Notice Plan, and Plan of Allocation, preliminarily certify the Settlement Class, and set a date for the Fairness Hearing.

Dated: August 23, 2024

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh
James A. Wells
312 Old Lancaster Road
Merion Station, PA 19066
Email: markg@capozziadler.com
        jayw@capozziadler.com
Tel: (610) 890-0200
Fax: (717) 233-4103

**ROSMAN & GERMAIN LLP**
Daniel L. Germain (State Bar No. 143334)
5959 Topanga Canyon Boulevard, St. 360
Woodland Hills, CA  91367-7503
Telephone: (818) 788-0877
Facsimile: (818) 788-0885
Email: germain@lalawyer.com

**MUHIC LAW LLC**
Peter A. Muhic
(*Admitted Pro Hac Vice*)
923 Haddonfield Road,
Suite 300 Cherry Hill, NJ  08002
Phone:  (856) 324-8252
Fax:  (717) 233-4103
Email: peter@muhiclaw.com